# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

CHIPMAN L. FLOWERS, JR., AND )
THE ARCHIVES OF THE )
HONORABLE CHIP FLOWERS, JR., )
                                     )    C.A. No. N16A-05-004 FWW
    Petitioners Below, Appellants )
    and Cross-Appellees, )
                                       )
          v. )
                                       )
THE OFFICE OF THE GOVERNOR, )
                                       )
    Respondent Below, Appellee )
    and Cross-Appellant, and, )
                                       )
OFFICE OF THE ATTORNEY )
GENERAL OF THE STATE OF )
DELAWARE, )
                                       )
    Appellee. )

Submitted: May 31, 2017
Decided: August 8, 2017

## OPINION

Upon Cross-Appeal from the Chief Deputy Attorney General:
**REVERSED in part; AFFIRMED in part.**

P. Clarkson Collins, Jr., Esquire, Nicolas Krawitz, Esquire, Morris James LLP, 500 Delaware Avenue, P.O. Box 2306, Wilmington, Delaware 19899; Attorneys for Appellants Chipman L. Flowers, Jr. and the Archives of the Honorable Chip Flowers, Jr.

Max B. Walton, Esquire, Kyle Evans Gay, Esquire, Connolly Gallagher LLP, 267 East Main Street, Newark, Delaware 19711; Attorneys for Appellee the Office of the Governor.

**WHARTON, J.**

## I.   INTRODUCTION

Delaware's Freedom of Information Act ("FOIA") was enacted in 1976.  In 2010, the statute was amended to remedy a perceived inequity.  Prior to the amendment, a citizen who was denied access to records by a public body the Attorney General was not obliged to represent was able to enlist the assistance of the Attorney General in obtaining those records.  The only recourse available to another citizen who was denied access to records by a public body the Attorney General was obliged to represent, however, was to bring suit on his own at his own expense against the public body, which in turn, was defended by the Attorney General.

In order to remedy this situation, the 2010 amendment enlists the Chief Deputy Attorney General ("Chief Deputy") to determine if a state public body has violated FOIA.  If the Chief Deputy determines that there was a violation, the Attorney General may not represent that body if it fails to correct the violation.  The amendment permits either party to appeal the Chief Deputy's decision to the Superior Court on the record.  While the amendment does address the perceived inequity, it also presents a number of interpretive issues.  Some of those issues are addressed here.  Others necessarily must await future litigation.

In this cross-appeal, Appellants Chipman L. Flowers, Jr. and the Archives of the Honorable Chip Flowers, Jr. ("Appellants") and Appellee the Office of the Governor ("Governor's Office") request this Court to resolve, among other things,

whether the Governor's Office's reasons for denying Appellants access to various records are sufficient to satisfy its burden of proof. The Chief Deputy determined that the Governor's Office did not violate FOIA when it withheld documents pursuant to 29 *Del. C.* § 10002(l)(6) ("Privilege Exemption"), but she was unable to determine whether the Governor's Office violated FOIA when it withheld documents pursuant to 29 *Del. C.* § 10002(l)(16) ("Legislative E-Mail Exemption"). Instead, the Chief Deputy asked the Governor's Office to review the "content or context" of e-mails withheld under the Legislative E-Mail Exemption consistent with her understanding of the scope of that exemption.

For the following reasons, the Court finds that the Chief Deputy's understanding of the Legislative E-Mail Exemption was mistaken and that the Governor's Office has provided sufficient reasons to satisfy its burden of proof as to both the Legislative E-Mail Exemption and the Privilege Exemption. Accordingly, the Governor's Office has not violated FOIA. The Chief Deputy's decision is therefore **REVERSED in part** and **AFFIRMED in part**.

## II.   FACTUAL AND PROCEDURAL CONTEXT

### A.   Appellants' FOIA Request

On March 16, 2015, Appellants submitted a FOIA request ("Request") to the Governor's Office pursuant to 29 *Del. C.* § 10003(f).[1]   In the Request, Appellants

---

[1] R. at 4, 12.

3

sought "[a]ll non-privileged emails from or received by Governor Markell, Sean Barney, Mike Barlow, Secretary of State Jeff Bullock, and Secretary of Finance Tom Cook that 'specifically referenc[e]' former State Treasurer Chip Flowers, Ms. Erika Benner, the Cash Management Policy Board, and certain members thereof."[2] Appellants sought all responsive e-mails "from January, 2011 through January, 2015, . . . includ[ing] 'emails on litigation hold from the Delaware Department of Justice.'"[3] Appellants sought these e-mails from the Governor's Office "to archive Mr. Flowers' significant achievements and contributions during his tenure as State Treasurer."[4]

By letter dated April 6, 2015, the Governor's Office informed Appellants that the Request would take longer than the statutorily-allotted fifteen days to fulfill because the Request was "for voluminous records, requires legal advice, and includes records that are in storage or are archived . . . ."[5] The letter further noted

---

[2] R. at 4.
[3] R. at 4.
[4] R. at 4.
[5] R. at 4, 12, 238. *See* 29 *Del. C.* § 10003(h)(1) ("The public body shall respond to a FOIA request as soon as possible, but in any event within 15 business days after the receipt thereof, either by providing access to the requested records, denying access to the records or parts of them, or by advising that additional time is needed because the request is for voluminous records, requires legal advice, or a record is in storage or archived. If access cannot be provided within 15 business days, the public body shall cite 1 of the reasons hereunder why more time is needed and provide a good-faith estimate of how much additional time is required to fulfill the request.").

4

that Appellants' Request may yield certain documents that are not public records and that the Governor's Office reserved "all rights to invoke any applicable FOIA exceptions in connection with this request."[6]

On July 16, 2015, the Governor's Office fulfilled the Request by providing responsive records to Appellants.[7] However, the Governor's Office withheld certain e-mails from public disclosure, believing they were exempt from FOIA's definition of public records.[8] The Governor's Office withheld e-mails that were "specifically exempted from public disclosure by statute or common law" pursuant to the Privilege Exemption.[9] The Governor's Office did not specify which statutory or common law exemptions it was relying on, however.[10] The Governor's Office also withheld e-mails "received or sent by members of the Delaware General Assembly or their staff" pursuant to the Legislative E-Mail Exemption.[11]

By e-mail dated August 4, 2015, Appellants' counsel informed the Governor's Office that Appellants already possessed two e-mails (collectively referred to as the "Sample E-Mails") that were responsive to the Request but were inexplicably excluded from the records provided.[12] The Sample E-Mails were sent on May 28,

---

[6] R. at 12.
[7] R. at 14.
[8] R. at 14.
[9] R. at 14.
[10] R. at 14.
[11] R. at 14.
[12] R. at 214, 217–20.

2013.[13] David Marvin sent the first e-mail to John Flynn at 8:54 a.m. ("First Sample E-Mail").[14] John Flynn forwarded the First Sample E-Mail to Jeff Bullock, Tom Cook, and Governor Markell with his own response contained therein at 6:16 p.m. ("Second Sample E-Mail").[15] John Flynn copied Michael Morton, who is the Delaware Controller General, on to the Second Sample E-Mail.[16]

Appellants believed the Sample E-Mails "did not appear to implicate either the attorney-client privilege or meet the criteria for invoking the Legislative Email Exemption."[17] Appellants argued, then, that the Sample E-Mails should have been deemed public records and disclosed to them by the Governor's Office.[18] Appellants therefore requested the Governor's Office to provide them with a privilege log in order to determine how the Governor's Office applied the exemptions.[19]

The next day, the Governor's Office responded to counsel's e-mail.[20] The Governor's Office stated that 29 *Del. C.* § 10003(h)(2) does not require it to "provide a privilege log as to each record or part of a record denied."[21] Furthermore, the

---

[13] R. at 217.
[14] R. at 218.
[15] R. at 217.
[16] R. at 217.
[17] Appellants' Opening Br., D.I. 16, at 4.
[18] R. at 5–8.
[19] R. at 5, 214.
[20] R. at 5, 214.
[21] R. at 5, 214.

6

Governor's Office reemphasized that certain records were withheld under the Legislative E-Mail Exemption and the Privilege Exemption.[22]

## B. Appellants' FOIA Petition

Because Appellants were unable to reconcile the undisclosed Sample E-Mails with the asserted exemptions, Appellants filed a Petition on September 11, 2015 with the Chief Deputy pursuant to 29 *Del. C.* § 10005(e).[23] Appellants requested the Chief Deputy to determine whether the Governor's Office interpreted the "asserted exemptions too broadly."[24]

In Appellants' Petition, they argued the Sample E-Mails did not fall under the Legislative E-Mail Exemption.[25] Appellants argued that neither members of the General Assembly nor their staff sent or received the First Sample E-Mail.[26] Regarding the Second Sample E-Mail, Appellants conceded Michael Morton would qualify as a member of the General Assembly when he acts in his official capacity as the Delaware Controller General.[27] However, Appellants argued the Second Sample E-Mail only pertained to his involvement as a member of the Cash Management Policy Board.[28] Additionally, Appellants argued Michael Morton did

---

[22] R. at 214.
[23] R. at 2.
[24] R. at 5.
[25] R. at 8.
[26] R. at 8.
[27] R. at 8.
[28] R. at 8.

not *receive* the Second Sample E-Mail because he was only *copied* on to it.[29] Finally, Appellants argued the Sample E-Mails could not have been protected under the attorney-client privilege because these e-mails were clearly not drafted for the purpose of facilitating legal services to a client.[30]

## C. The Governor's Office's Response to the FOIA Petition

On October 5, 2015, the Governor's Office responded to Appellants' Petition to the Chief Deputy ("Response").[31] For the first time, the Governor's Office specified it did not solely rely upon the attorney-client privilege in withholding records under the Privilege Exemption.[32] The Governor's Office claimed it also withheld records under the draft document privilege and the executive privilege.[33] The Governor's Office said that "[t]he Privilege Exemption has long been construed to encompass draft documents and communications."[34] Likewise, the Governor's Office said the Privilege Exemption includes the executive privilege, and therefore, it withheld "communications between the Governor and members of the Governor's Cabinet or senior policy staff."[35]

---

[29] R. at 8.

[30] R. at 7.

[31] R. at 223.

[32] R. at 227 ("[T]he Office only withheld as attorney-client privileged those communications in which legal advice was sought or provided by legal counsel to the Office.").

[33] R. at 227.

[34] R. at 227.

[35] R. at 227.

The Governor's Office asserted in the Response that it also withheld all e-mails that were sent or received by members of the General Assembly or their staff, "including the email, referenced in the Petition, on which Michael Morton of the Office of the Controller General was copied."[36]

In support of the Response, the Governor's Office proffered the affidavit of Danielle Blount ("Blount Affidavit"), who served as Governor Markell's Deputy Legal Counsel.[37] The Blount Affidavit states that "[t]he documents that the Office withheld under the 'Privilege Exemption' include documents in the following categories of privilege: the attorney-client privilege; the executive privilege; and the 'draft document' privilege."[38] The Blount Affidavit also states that

> [t]he documents that the Office withheld under the 'Legislative Email' exemption include emails sent or received by members of the General Assembly and their staff, including emails in which legislators or staff members are copied. As the Comptroller General is considered part of the General Assembly's staff when acting in his official capacity, emails copying the Comptroller General were also withheld pursuant to this exception.[39]

## D.    The Chief Deputy's Opinion

On March 14, 2016, the Chief Deputy rendered her decision regarding the Petition. The Chief Deputy acknowledged the burden of proof is on the public body

---

[36] R. at 228.
[37] R. at 232.
[38] R. at 232–33.
[39] R. at 233.

9

to justify its reasons for withholding records.[40] As to the Privilege Exemption, however, the Chief Deputy did not analyze whether the Governor's Office had met its burden of proof.[41] Instead, the Chief Deputy noted that Appellants presumed the Governor's Office only relied upon the attorney-client privilege in withholding records.[42] The Chief Deputy stated the Response and Blount Affidavit show that the Governor's Office also relied on the executive privilege and draft document privilege.[43] The Chief Deputy found the executive and draft document privileges "have been recognized in other circumstances," and Appellants did not contest their application in discussions prior to the Chief Deputy's decision.[44] Because Appellants did not contest their application, the Chief Deputy determined that no FOIA violation occurred.[45]

As to the Legislative E-Mail Exemption, the Chief Deputy found the Governor's Office had not met its burden of proof in establishing that the records were properly withheld.[46] Specifically, the Chief Deputy found the Governor's Office improperly interpreted the Legislative E-Mail Exemption as broadly as possible by withholding *all* e-mails that were sent or received by members of the

---

[40] R. at 244 n.11.
[41] R. at 242.
[42] R. at 242.
[43] R. at 242–43.
[44] R. at 243.
[45] R. at 243.
[46] R. at 244.

General Assembly or their staff.[47] The Chief Deputy found that "[r]eading 'all' into the statute undermines the fundamental goals of FOIA, which explicitly include allowing citizens to monitor the work of public officials and public bodies."[48] Thus, the Chief Deputy concluded that withholding an e-mail solely because members of the General Assembly or their staff sent or received an e-mail does not coincide with FOIA's purpose.[49] Instead, the Chief Deputy found the public body must also consider the "content or context" of an e-mail in determining whether it is a public record.[50]

Furthermore, the Chief Deputy found that, while the contours of the Legislative E-Mail Exemption remain unclear,[51] "the legislative history of the exemption suggests that its purpose is to protect the privacy of constituent communications, which, of course, may concern subjects other than enacting laws."[52] As a result, the Chief Deputy noted that she would "support a decision to continue to withhold under [the Legislative E-Mail Exemption] any communication

---

[47] R. at 244.

[48] R. at 244.

[49] R. at 247.

[50] R. at 244. *See also* R. at 247 ("We ask the Governor's Office to review any emails withheld solely on the basis of [the Legislative E-Mail Exemption], with the understanding that the content or context is also relevant to the analysis.").

[51] R. at 238 ("We respectfully note that the General Assembly should clarify the contours of [the Legislative E-Mail Exemption] by amending the statute, and we believe that requesting parties and public bodies alike would benefit from such clarification.").

[52] R. at 246.

between a member of the General Assembly or its staff (i) with the member's constituent or (ii) reflecting the substance of such communications, regardless of the identity of the sender or recipient(s)."[53]

Despite finding that the Governor's Office had not satisfied its burden, the Chief Deputy could not conclude that the Governor's Office violated FOIA.[54] Rather, the Chief Deputy determined that Appellants must "conduct a more thorough review of [the] emails withheld" in light of the Chief Deputy's interpretation of the Legislative E-Mail Exemption.[55]

Regarding the Sample E-Mails, the Chief Deputy was unable to make many findings with the record provided. The Chief Deputy could not determine whether the First Sample E-Mail was withheld under the Legislative E-Mail Exemption.[56] With respect to the Second Sample E-Mail, the Chief Deputy determined that Michael Morton "received" the e-mail even though he was only copied on to it.[57] The Chief Deputy noted that, in the context of e-mail communications, "'receive' is ordinarily understood to mean that the email arrives in the in-box of the addressee (or, perhaps, in another location designated by the addressee) and is available to be viewed. There is nothing in the record to indicate that this email did not arrive in

---

[53] R. at 247.
[54] R. at 244, 247.
[55] R. at 244.
[56] R. at 244.
[57] R. at 245.

Mr. Morton's in-box."[58]   Finally, the Chief Deputy did not determine whether Michael Morton received the Second Sample E-Mail in his capacity as either the Controller General or a member of the Cash Management Policy Board.[59]

On May 10, 2016, Appellants timely filed a Notice of Appeal to this Court, and on May 13, 2016, the Governor's Office timely filed its Notice of Cross-Appeal.

On February 17, 2017, the parties appeared before the Court for oral argument.

By letter dated May 11, 2017, the Court requested the parties to submit supplemental briefing regarding issues that were not addressed in their original submissions.[60]   The parties submitted their responses on May 31, 2017.

## III.   THE PARTIES' CONTENTIONS

In this cross-appeal, the parties have presented three main issues for the Court to resolve.  First, did the Chief Deputy erroneously conclude that the Legislative E-Mail Exemption requires the public body to analyze the content and context of an e-mail in determining whether it should be withheld?  Second, did the Governor's Office provide sufficient "reasons" for withholding records under the Privilege

---

[58] R. at 245.

[59] R. at 245.

[60] *See* D.I. 28.  The Court requested answers to two questions.  Based on the answers the parties submitted, the Court has determined not to pursue the issues raised by those questions.  Nonetheless, the Court appreciates the parties' answers which have enhanced the Court's understanding of the statute.

Exemption in order to satisfy its burden of proof? Third, and finally, can and should the Court award attorney's fees in this appellate proceeding?

**A.   Does The Legislative E-Mail Exemption Require a Public Body to Analyze the "Content or Context" of an E-Mail in Determining Whether It Should Be Withheld?**

The Governor's Office argues the Chief Deputy erred as a matter of law when she concluded that the Legislative E-Mail Exemption requires the public body to review the "content or context" of an e-mail.[61] The Governor's Office contends this interpretation of the exemption contradicts the basic rules of statutory construction, which provide that the plain and unambiguous language of a statute controls.[62] Similarly, the Governor's Office argues the Chief Deputy's interpretation impermissibly adds language to the Legislative E-Mail Exemption.[63] If the General Assembly wanted public bodies to look at the content and context of e-mails, the Governor's Office argues the General Assembly should have inserted such language in the exemption.[64] As a result, the Governor's Office argues that all e-mails sent or received by members of the General Assembly or their staff are exempt from disclosure, regardless of the e-mails' content and context.[65] Likewise, the

---

[61] Appellee's Answering Br., D.I. 18, at 2, 12–19.
[62] *Id.* at 12.
[63] *Id.* at 13.
[64] *Id.* at 15.
[65] *Id.* at 12–14.

Governor's Office argues the Legislative E-Mail Exemption is not limited to constituent communications.[66]

In response, Appellants argue the Chief Deputy's interpretation of the Legislative E-Mail Exemption is correct.[67] In their view, the Governor's Office should not be allowed to withhold e-mails solely because members of the General Assembly or their staff sent or received an e-mail.[68] Appellants therefore agree with the Chief Deputy that the Legislative E-Mail Exemption does require the public body to analyze the content and context of an e-mail in ascertaining whether it is a public record.[69] Such an analysis, Appellants argue, is consistent with established policies that FOIA provisions are to be construed to further government accountability and that exemptions are to be narrowly construed.[70] Moreover, Appellants assert the General Assembly intentionally omitted the word "all" from the Legislative E-Mail Exemption because it did not intend to categorically exempt all legislators' e-mails from disclosure.[71] As to the argument that the exemption is limited to constituent communications, Appellants contend the Chief Deputy made no such finding in her

---

[66] *Id.* at 14–15.
[67] Appellants' Answering Br., D.I. 20, at 24–27.
[68] *Id.*
[69] *Id.*
[70] *Id.* at 25–26.
[71] *Id.* at 26–27.

decision.[72] Therefore, Appellants assert the Chief Deputy's interpretation should be affirmed.

If the content and context of the Sample E-Mails were reviewed, Appellants argue these e-mails would not be exempt under the Legislative E-Mail Exemption.[73] Appellants contend the Governor's Office "withheld the Sample Emails solely because Michael Morton, a member of the Delaware General Assembly, was copied on the communication."[74] However, Appellants argue Michael Morton did not *receive* the Sample E-Mails because he was merely *copied* on to them.[75] Furthermore, Appellants argue the content and context of the Sample E-Mails show that Michael Morton was copied on to them in his capacity as a member of the Cash Management Policy Board, and not in his legislative capacity as the Controller General.[76]

In the alternative, Appellants argue the Chief Deputy erred by failing to conclude that a FOIA violation occurred.[77] FOIA expressly provides that the burden of proof shall be on the public body to justify the denial of access to records.[78] The Chief Deputy found the Governor's Office had not carried its burden of proof in

---

[72] *Id.* at 25–26.
[73] *Id.* at 28.
[74] *Id.*
[75] *Id.*
[76] *Id.*
[77] Appellants' Opening Br., D.I. 16, at 10–12.
[78] *Id.*

withholding e-mails under the Legislative E-Mail Exemption.[79]  Instead of finding

that a violation occurred, the Chief Deputy permitted the Governor's Office to

"conduct a more thorough review of [the] emails withheld."[80]  Appellants contend

that a public body's inability to satisfy its burden of proof necessitates a finding that

a FOIA violation occurred.[81]  Appellants argue the Chief Deputy's failure to arrive

at such a conclusion constitutes legal error.[82]

**B.     Did the Governor's Office Provide Sufficient "Reasons" for Withholding Records Under the Privilege Exemption to Satisfy Its Burden of Proof?**

Appellants argue the Governor's Office provided insufficient reasons for

withholding e-mails under the Privilege Exemption to satisfy its burden of proof.[83]

Although the public body is not required to provide an index or other compilation

under FOIA, Appellants argue the statute does require the public body to at least

provide a general description of the criteria used in asserting various privileges such

that a reviewing court may determine the propriety of those asserted privileges.[84]

---

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] Appellants' Answering Br., D.I. 20, at 18–24.

[84] *Id.* at 22.  ("The Governor's Office's argument presumes there is no level of disclosure above mere legal conclusions and below a privilege log that is consistent with FOIA.  There is no basis for that presumption.  To begin, and contrary to the Governor's Office's straw man, Appellants seek only a general description of how the broad privilege categories identified in the Blount Affidavit were applied so that they may determine, despite their informational disadvantage, whether the privilege assertions were appropriate.").

Here, Appellants argue the Court cannot review the propriety of the asserted privileges because the Response and Blount Affidavit merely identify privileges without further explanation as to their applicability.[85] Therefore, Appellants argue the Court must find that a FOIA violation occurred.

Appellants further contend that the Chief Deputy's decision impermissibly placed the burden of proof on Appellants to disprove the application of the asserted privileges. Specifically, the Chief Deputy found that Appellants failed to challenge the Governor's Office's invocation of the draft document and executive privileges prior to the Chief Deputy's decision. The Chief Deputy also stated that, "if the two emails were not covered by either of the two additional privileges, it would not mean that [the Privilege Exemption] was incorrectly applied, because the emails could have been withheld pursuant to other exemptions."[86] Appellants contend these findings appear to require that Appellants disprove the possible application of privileges as to the records withheld, thereby shifting the burden of proof on to the requestor, instead of the public body.[87]

The Governor's Office responds by arguing that it provided sufficient reasons for withholding e-mails under the Privilege Exemption to satisfy its burden of proof. The statute requires the public body to provide "reasons" for withholding records

---

[85] *Id.* at 19.
[86] Appellants' Opening Br., D.I. 16, at 13–14.
[87] *Id.*

under an exemption.[88] Here, the Governor's Office claims the Response, coupled with the Blount Affidavit, provide sufficient reasons to support the nondisclosure of certain e-mails.[89] Also, the Governor's Office argues the plain language of FOIA does not require a public body to either outline the contours of any privilege asserted or provide a general description of how the privileges were applied.[90]

## C. Is FOIA's Provision Permitting the Court to Award Attorney's Fees and Costs to a Successful Plaintiff in "Any Action" Brought Under FOIA Limited to Those Actions Where the Court Acts as a Trial Court Rather than as an Appellate Court?

Appellants argue that, because a FOIA violation occurred, the Court should award them attorney's fees and costs pursuant to 29 *Del. C.* § 10005(d).[91] Under § 10005(d), the Court may "award attorney fees to a successful plaintiff of any action brought under this section."[92] Appellants contend an appeal to this Court is an "action" within the meaning of the statute.[93] Therefore, Appellants contend the Court has the discretion to award fees in the present appeal and should do so because of the violations that occurred.[94]

---

[88] Appellee's Answering Br., D.I. 18, at 24–30.
[89] *Id.*
[90] Appellee's Reply Br., D.I. 22, at 10.
[91] Appellants' Answering Br., D.I. 20, at 31–33.
[92] *Id.* at 31.
[93] *Id.* at 31–32.
[94] *Id.* at 33.

19

Assuming *arguendo* that a violation did occur, the Governor's Office argues attorney's fees should not be awarded for two reasons. First, the Governor's Office argues § 10005(d) does not permit the Court to award attorney's fees in this proceeding.[95] The Governor's Office argues the phrase "any action" only refers to *suits* filed in this Court.[96] To support this assertion, the Governor's Office points to § 10005(d)'s language, which uses the terms "plaintiff" and "defendant."[97] Section 10005(d) does not use the terms "appellant" and "appellee."[98] As a result, the Governor's Office argues the phrase "any action" does not refer to an appellate proceeding in this Court, and therefore, the Court cannot award attorney's fees and costs.[99]

Second, regardless of the interpretation of § 10005(d), the Governor's Office contends the Court's power to award attorney's fees under the statute is discretionary.[100] Here, the Governor's Office asserts it would be unreasonable for the Court to award attorney's fees under a discretionary provision when novel legal issues, including those of first impression, are presented to the Court.[101]

---

[95] Appellee's Answering Br., D.I. 18, at 31–32.
[96] *Id.*
[97] *Id.*
[98] *Id.*
[99] *Id.*
[100] *Id.* at 32–33.
[101] *Id.*

## IV. STANDARD OF REVIEW

An appeal from the Chief Deputy's decision to the Superior Court is "on the record."[102] In this cross-appeal, only issues of statutory interpretation are raised by the parties. Given that questions of statutory interpretation are questions of law, the Court reviews the issues *de novo*.[103]

## V. DISCUSSION

### FOIA Overview

FOIA, "Delaware's 'sunshine law,' provides for open meetings and open records of governmental or public bodies."[104] FOIA's underlying policy is "to ensure government accountability, inform the electorate and acknowledge that public entities, as instruments of government, should not have the power to decide

---

[102] 29 *Del. C.* § 10005(b) ("Thereafter, the petitioner or public body the Attorney General is otherwise obligated to represent may appeal an adverse decision on the record to the Superior Court within 60 days of the Attorney General's decision."); § 10005(e) ("Regardless of the finding of the Chief Deputy, the petitioner or the public body may appeal the matter on the record to Superior Court.").

[103] *Delaware Dep't of Nat. Res. & Envtl. Control v. Sussex Cnty.*, 34 A.3d 1087, 1090 (Del. 2011) ("Statutory interpretation is a question of law. Accordingly, this Court does not defer to either the agency's or the Superior Court's interpretation of the statutes in question."); *McGee v. Council on Police Training*, 2014 WL 662327, at *8 (Del. Super. Jan. 17, 2014) ("Questions of law and questions of statutory interpretation are reviewed *de novo*."). *See also Public Water Supply Co. v. DiPasquale*, 735 A.2d 378, 379 (Del. 1999); *Pizzadili Partners, LLC v. Kent Cnty. Bd. of Adjustment*, 2016 WL 4502005, at *3 (Del. Super. Aug. 26, 2016).

[104] *Guy v. Judicial Nominating Comm'n*, 659 A.2d 777, 780 (Del. Super. 1995) (citing §§ 10003, 10004).

what is good for the public to know."[105]  This policy is expressed in the statute as follows:

> It is vital in a democratic society that public business be performed in an open and public manner so that our citizens shall have the opportunity to observe the performance of public officials and to monitor the decisions that are made by such officials in formulating and executing public policy; and further, it is vital that citizens have easy access to public records in order that the society remain free and democratic. Toward these ends, and to further the accountability of government to the citizens of this State, this chapter is adopted, and shall be construed.[106]

Under FOIA, then, individuals have the right to inspect "public record[s]" of "public bod[ies]."[107]  The statute's definition of "public record" is very broad.[108] However, despite the stated statutory policy of fostering openness and

---

[105] *Id.* (quoting *Delaware Solid Waste Auth. v. News-Journal Co.*, 480 A.2d 628, 631 (Del. 1984)).

[106] § 10001.

[107] *See id.* § 10002(h) ("'Public body' means, unless specifically excluded, any regulatory, administrative, advisory, executive, appointive or legislative body of the State, or of any political subdivision of the State, including, but not limited to, any board, bureau, commission, department, agency, committee, ad hoc committee, special committee, temporary committee, advisory board and committee, subcommittee, legislative committee, association, group, panel, council or any other entity or body established by an act of the General Assembly of the State, or established by any body established by the General Assembly of the State, or appointed by any body or public official of the State or otherwise empowered by any state governmental entity . . . .").

[108] *See id.* § 10002(l) ("'Public record' is information of any kind, owned, made, used, retained, received, produced, composed, drafted or otherwise compiled or collected, by any public body, relating in any way to public business, or in any way of public interest, or in any way related to public purposes, regardless of the physical form or characteristic by which such information is stored, recorded or reproduced.").

accountability, the statute contains nineteen exemptions to the definition of what constitutes a public record. Two of those exemptions, the Legislative E-Mail Exemption and the Privilege Exemption, are at issue in this case.[109] A public body that withholds records pursuant to any of the statutory exemptions must provide the requestor its "reasons" for doing so.[110] But, FOIA does not require a public body to provide the requestor with a privilege log or an index that specifies why each record was withheld.[111]

A requestor may challenge the public body's "reasons" for denying the requestor access to records by petitioning the Attorney General.[112] When the Attorney General receives the petition, the Attorney General must first determine whether he or she is obligated to represent the public body.[113] If the Attorney General is not obligated to represent the public body pursuant to 29 *Del. C.* § 2504, then the Attorney General determines whether the public body violated FOIA.[114] In those instances where the Attorney General finds that the public body violated FOIA, the requestor may take the following actions: (1) file suit in the Superior

---

[109] *Id.* § 10002(l)(6), (16).
[110] *Id.* § 10003(h)(2).
[111] *Id.*
[112] *See* § 10005(e).
[113] *Id.*
[114] *Id.*

Court or (2) request in writing that the Attorney General file suit on the requestor's behalf.[115]

However, if the Attorney General is obligated to represent the public body pursuant to § 2504, then the requestor's petition is referred to the Chief Deputy.[116] The Chief Deputy, not the Attorney General, determines whether the public body violated FOIA.[117] If the Chief Deputy determines that a violation has occurred, then the Attorney General is barred from representing the public body in any appeal of the Chief Deputy's decision if the public body fails to comply with that decision.[118] Thereafter, the public body or the requestor may appeal the Chief Deputy's decision on the record to the Superior Court, as the parties have done in this case.[119]

---

[115] *Id.*

[116] *Id.*

[117] *Id.*

[118] *Id.*

[119] *Id.* § 10005(b), (e). As the Court noted in the Introduction, Section 10005 was amended in 2010. Prior to the amendment, § 10005(b) merely provided that a citizen who is denied access to public records could bring suit within sixty days of the denial. Moreover, § 10005(e) allowed a citizen to petition the Attorney General to determine whether a violation occurred. If the Attorney General determined that a violation had occurred, the citizen could then bring suit or request the Attorney General to bring suit on the citizen's behalf. However, if the public body denying access was one that the Attorney General was obliged to represent, § 10005(f) made § 10005(e) inapplicable. Consequently, the statutory structure in place prior to the 2010 amendment provided that an aggrieved citizen could receive considerable assistance from the Attorney General in gaining access to wrongfully withheld public records, including the possibility of the Attorney General bringing suit on behalf of the citizen, if the Attorney General was not obliged to represent that public body. On the other hand, if the Attorney General was obliged to represent the public body, the citizen's only recourse was to bring suit on his or her own. As shown

24

Regardless of who reviews the requestor's petition, the burden of proof is on the public body to demonstrate that its "reasons" for withholding records were sufficient.[120] With this statutory framework in mind, the Court turns to the issues at hand.

### A. The Plain Language of the Legislative E-Mail Exemption Does Not Require the Public Body to Analyze the Content and Context of an E-Mail.

The rules of statutory construction are well established in Delaware. The Court must first determine whether the statute under consideration is unambiguous.[121] "If the statute is unambiguous, then there is no room for judicial interpretation and 'the plain meaning of the statutory language controls.'"[122] However, if the statute is ambiguous—that is, if the "statute is capable of being reasonably interpreted in two or more different senses"[123]—then the Court must

---

above, the 2010 amendment created a bifurcated review process to rectify the inequitable situation where one citizen would be on his or her own litigating against state public bodies defended by the Attorney General, while another citizen would have the assistance of the Attorney General litigating against non-state public bodies. *See* Sen. 283, 145th Gen. Assemb., Sec. Reg. Sess. (Del. 2009).

[120] § 10005(c).

[121] *Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem.'l Hosp., Inc.*, 36 A.3d 336, 342 (Del. 2012).

[122] *Id.* at 343 (quoting *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999)). *See also Norman J. Singer, Sutherland Statutes and Statutory Construction* § 46:1 (7th ed. 2015) ("The rules of statutory construction favor according statutes with their plain and obvious meaning, and courts assume the legislature knew the plain and ordinary meanings of the words it chose to include in a statute.").

[123] *Doroshow, Pasquale, Krawitz & Bhaya*, 36 A.3d at 342 (citing *CML V, LLC v. Bax*, 28 A.3d 1037, 1041 (Del. 2011)).

25

consider the statute as a whole, rather than its parts, and read each section in light of all others to produce a harmonious whole.[124]  In interpreting statutes, the Court's essential goal "is to ascertain and give effect to the intent of the legislature."[125]

Here, the Court finds that the General Assembly's intent is evident based upon the unambiguous language of the Legislative E-Mail Exemption.  Pursuant to the Legislative E-Mail Exemption, "[e]mails received or sent by members of the Delaware General Assembly or their staff" are not public records.[126]  Interpreting this language, the Chief Deputy found that it is impermissible "to withhold an email *solely* on the basis that the sender or a recipient is a member of the General Assembly or its staff."[127]  However, the plain language of the exemption does not support this conclusion.  Rather, the Legislative E-Mail Exemption states that e-mails sent or received by members of the General Assembly or their staff are not public records. There is no mention in the exemption of a "content or context" limitation.[128]

---

[124] *Taylor v. Diamond State Port Corp.*, 14 A.3d 536, 538 (Del. 2011) (citing *Dewey Beach Enters., Inc. v. Bd. of Adjustment*, 1 A.3d 305, 307 (Del. 2010)).
[125] *See Acadia Brandywine Town Ctr., LLC v. New Castle Cnty.*, 879 A.2d 923, 927 (Del. 2005) (quoting *Dir. of Revenue v. CAN Holdings, Inc.*, 818 A.2d 953, 957 (Del. 2003)); *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d 1242, 1246 (Del. 1985) (citing 73 Am. Jur. 2d *Statutes* § 146 (1974)).
[126] § 10002(l)(16).
[127] R. at 247 (emphasis added).
[128] It logically follows from this conclusion that the Legislative E-Mail Exemption includes, but is not limited, to constituent communications.  The Governor's Office argues the Chief Deputy created a "constituent communication limitation" within the exemption.  *See* Appellee's Answering Br., D.I. 18, at 14.  However, the Chief Deputy did not make that finding.  She indicated that constituent communications,

Requiring the Governor's Office to review e-mails for "content or context" adds an element of interpretive ambiguity not found in the statute. It is unclear exactly what "content" or what "context" would require disclosure and what would not under the Chief Deputy's formulation.

While the Chief Deputy appears to consider the exemption too broad, she may not override the legislature by narrowing the plain language of the exemption to make it seem more congenial to the language of § 10001.[129] The Court is mindful that exemptions are to be narrowly construed and that FOIA is to be construed to further open access to public records,[130] but the Court must resist the temptation to construe statutory provisions against their plain meaning.[131]

---

at a minimum, would be exempt from disclosure given the exemption's legislative history, leaving it an open and, in the Court's view, problematic question as to what else, if anything, might be exempt.

[129] *Leatherbury v. Greenspun*, 939 A.2d 1284, 1292 (Del. 2007) ("Judges must take the law as they find it, and their personal predilections as to what the law should be have no place in efforts to override properly stated legislative will."); *Barone v. Progressive Northern Ins. Co.*, 2014 WL 686953, at *4 (Del. Super. Jan. 29, 2014) ("Further, it is equally well-established that, '[i]n our constitutional system, this Court's role is to interpret the statutory language that the General Assembly actually adopts . . . without rewriting the statute to fit a particular policy position." (quoting *Taylor v. Diamond State Port. Corp.*, 14 A.3d 536, 542 (Del. 2011))).

[130] *See ACLU v. Danberg*, 2007 WL 901592, at *3 (Del. Super. Mar. 15, 2007) ("The enumerated statutory exceptions to FOIA, including the 'pending or potential litigation' exception, pose a barrier to the public's right to access and are, therefore, narrowly construed. Nevertheless, even when construing statutory language narrowly, the court 'cannot ignore the plain meaning of the words of the statute.'" (citations omitted)).

[131] *See id. See also State v. Trimworks*, 1991 WL 15229, at *3 (Del. Super. Jan. 25, 1991) ("[S]tatutory language which is clear on its face should not be given a more

In the Chief Deputy's decision, she addressed the "risk of abuse" of the Legislative E-Mail Exemption if it is applied as written. Specifically, the Chief Deputy said that "[a]n unscrupulous person might copy a member of the General Assembly on any e-mail he wishes to shield from future release . . . ."[132] The Court acknowledges this concern, but again, the Court declines the invitation to engraft new language into the statute in order to correct this hypothetical problem. The fact that a statute is potentially subject to abuse (there is no allegation that the inclusion of Michael Morton as a recipient of the Second Sample E-Mail was intended to circumvent FOIA) is no warrant for the Court to redraw the statute. Accordingly, if the General Assembly is concerned about this possibility, then it, and not the Court, must change the statute.[133] Moreover, if the Court were to adopt the Chief Deputy's

restrictive application than its plain language calls for."); *Norman J. Singer, Sutherland Statutes and Statutory Construction* § 46:1 (7th ed. 2015) ("Courts are not free to read unwarranted meanings into an unambiguous statute, even to support a supposedly desirable policy not effectuated by the act as written.").

[132] R. at 245.

[133] *See Sheehan v. Oblates of St. Francis de Sales*, 15 A.3d 1247, 1259 (Del. 2011) ("[W]e do not sit as an überlegislature to eviscerate proper legislative enactments. It is beyond the province of courts to question the policy or wisdom of an otherwise valid law. Rather, we must take and apply the law as we find it, leaving any desirable changes to the General Assembly." (citing *In re Adoption of Swanson*, 623 A.2d 1095, 1099 (Del. 1993))); *Leatherbury*, 939 A.2d at 1292. *See also Chrysler Corp. v. State*, 457 A.2d 345, 349 (Del. 1983) ("To sustain the State's position would be to disregard the clear language of the Statute, to speculate, and to engage in impermissible judicial legislation. It is neither for the Secretary nor for this Court to adjudge the wisdom or practicality of a clear and plain statutory provision, or to restructure the Statute by interpretation." (citations omitted)).

28

interpretation of the Legislative E-Mail Exemption, it would appear, at a minimum, to substantially duplicate the existing statutory exemption for communications between a member of the General Assembly and that member's constituent.[134] The Court does not believe the General Assembly intended such a redundancy. For these reasons, the Court finds the Chief Deputy's interpretation of the Legislative E-Mail Exemption is in error. The Court also finds that the Governor's Office properly invoked the plain language of the Legislative E-Mail Exemption to satisfy its burden of proof.

Nonetheless, Appellants argue that the withheld Sample-Emails are evidence that the Governor's Office violated FOIA. They offer three reasons. First, the Second Sample E-Mail was not "received" by Michael Morton because he was merely copied on to it. Second, Appellants contend the Second Sample E-Mail was not sent to Michael Morton in his capacity as the Controller General. Third, the First Sample E-Mail did not involve Michael Morton at all, and therefore, Appellants argue there was no basis to withhold it.

First, the Court finds that any claimed violation regarding the Sample E-Mails is moot because Appellants already possess them. Second, as the Chief Deputy found, and as the Court agrees, Michael Morton did receive the Second Sample E-Mail. The Second Sample E-Mail was sent to his e-mail address and arrived in his

---

[134] *See* § 10002(l)(19).

mailbox. It logically follows then that Michael Morton "received" the e-mail under the plain meaning of the Legislative E-Mail Exemption. Next, Michael Morton, as Controller General, is an employee of the General Assembly who, primarily, works with and assists the Joint Finance Committee of the General Assembly.[135] By statute, the Controller General, along with the State Treasurer, the Secretary of Finance, and the Secretary of State, are *ex officio* members of the Cash Management Policy Board.[136] The Court considers Michael Morton, whether assisting the Joint Finance Committee or serving as an *ex officio* member of the Cash Management Policy Board, to be acting in his official capacity of Controller General and, thus, as a staff member of the General Assembly.

Finally, it is not at all clear to the Court that the First Sample E-Mail, standing alone, was within parameters of the documents requested, and subject to disclosure. It appears that the First Sample E-Mail was neither sent nor received by one of the individuals designated in the Request. It was sent to John Flynn by David Marvin,[137] neither of whom were designated senders or recipients of e-mails in the Request. Thus, Appellants did not request the First Sample E-Mail. Therefore, the Governor's Office was not required to produce it. The Second Sample E-Mail included the First Sample E-Mail when it was forwarded to designated recipients. Thus, this Second

---

[135] 29 *Del. C.* § 1110(a).
[136] 29 *Del. C.* § 2716(b).
[137] R. at 218.

Sample E-Mail (and along with it the First Sample E-Mail) would have been subject to disclosure but for the fact that it was copied to Michael Morton, bringing it within the scope of the Legislative E-Mail Exemption. For these reasons, neither Sample E-Mail was subject to disclosure. Any inference that the Governor's Office improperly applied the exemptions based upon its failure to disclosure the Sample E-Mails is unwarranted.

**B. The Governor's Office Provided Sufficient "Reasons" for Withholding Records Under the Privilege Exemption to Satisfy Its Burden of Proof.**

The resolution of this issue requires the Court to address what constitutes a sufficient reason for a public body to meet its burden of proof in order to justify withholding records under the Privilege Exemption. Section 10003(h)(2) requires the public body to provide "reasons" for denying a requestor access to records. Under that same section, the public body "shall not be required to provide an index, or any other compilation, as to each record or part of a record denied." This seeming dichotomy between the requirement for a public body to provide reasons for denying access in order to meet its burden, but not requiring that public body to specify those reasons for each record is at the heart of the dispute here.

Appellants seek for the Governor's Office to provide at least a general description of the criteria used in asserting various privileges such that a requestor or a reviewing court may determine the propriety of those asserted privileges. The

31

Governor's Office, on the other hand, contends that, because a privilege log is not required, an affidavit and a written submission that indicates the public body's reasons for denying access is sufficient to meet its burden.

In 1973, the U.S. Court of Appeals for the District of Columbia encountered the issue of the sufficiency of a public body's proffered reasons for denying access to records in the context of the federal FOIA in *Vaughn v. Rosen*.[138] There, the appellant sought disclosure of various government documents, including evaluations from certain agencies' personnel management programs.[139] The Bureau of Personnel Management declined to release documents pursuant to three statutory exemptions.[140] The appellant filed suit in federal district court, seeking injunctive relief and an order requiring disclosure of the requested materials.[141] The sole support for the Government's motion for summary judgment was the affidavit of the director of the Bureau of Personnel Management.[142] "This affidavit did not illuminate or reveal the contents of the information sought, but rather set forth in conclusory terms the Director's opinion that the evaluations were not subject to

---

[138] 484 F.2d 820 (D.C. Cir. 1973).
[139] *Id.* at 822.
[140] *Id.*
[141] *Id.* at 823.
[142] *Id.*

disclosure under the FOIA."[143]  Nevertheless, the district court granted the Government's motion for summary judgment based solely upon the affidavit.[144]

The circuit court reversed the district court's decision.  The court reasoned that it is "[o]bviously inevitable that the party with the greatest interest in obtaining disclosure is at a loss to argue with desirable legal precision for the revelation of the concealed information."[145]  This is so because the appellant could not review the records in dispute.  The court thus noted that "[t]he best appellant can do is to argue that the exception is very narrow and plead that the general nature of the documents sought make it unlikely that they contain such personal information."[146]  Likewise, the court acknowledged it too was in the difficult position of assessing the veracity of the Government's asserted exemptions given the affidavit provided.[147]  As a result, the court stated that it will "simply no longer accept conclusory and generalized allegations of exemptions . . . ."[148]  Instead, the court concluded that it would require the Government to produce an index, which specifically details why each document, or a portion thereof, was withheld.[149]  The court acknowledged that these new procedural requirements may impose a substantial burden on a

---

[143] *Id.*
[144] *Id.*
[145] *Id.*
[146] *Id.* at 824.
[147] *Id.* at 825.
[148] *Id.* at 826.
[149] *Id.* at 827.

government agency, but "the current approach places the burden on the party seeking disclosure, in clear contravention of the statutory mandate."[150]

Since *Vaughn*, nearly all federal courts have, in some way, adopted what is now regarded as the "*Vaughn* Index."[151] While federal courts may not require a *Vaughn* Index under all circumstances, they favor the index because it provides them with an opportunity to assess why each document was specifically withheld before resorting to a burdensome *in camera* review.

Unlike *Vaughn* and its progeny, this Court is statutorily prohibited from adopting such a useful procedural requirement.[152] The General Assembly enacted

---

[150] *Id.* at 828.

[151] *See, e.g., ACLU v. U.S. Dep't of Justice*, 844 F.3d 126, 129 n.4 (2d Cir. 2016); *Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 779 n.4 (9th Cir. 2015); *Batton v. Evers*, 598 F.3d 169, 176–83 (5th Cir. 2010); *Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 357 (4th Cir. 2009); *Miccosukee Tribe of Indians of Fla. v. U.S.*, 516 F.3d 1235, 1258 (11th Cir. 2008); *Missouri Coal. for Env't Found. v. U.S. Army Corps of Eng'rs*, 542 F.3d 1204, 1209–10 (8th Cir. 2008); *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1050 (3d Cir. 1995) ("While there is no set formula for a *Vaughn* index, the hallmark test is 'that the requestor and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure.'" (quoting *Hinton v. U.S. Dep't of Justice*, 844 F.2d 126, 129 (3d Cir. 1988))); *Church of Scientology Int'l v. U.S. Dep't of Justice*, 30 F.3d 224, 229 (1st Cir. 1994); *Jones v. F.B.I.*, 41 F.3d 238, 242–44 (6th Cir. 1994); *Dickerson v. U.S. Dep't of Justice*, 992 F.2d 1426, 1430–33 (6th Cir. 1993); *Anderson v. Dep't of Health and Human Servs.*, 907 F.2d 936 (10th Cir. 1990).

[152] *Compare* § 10003(h)(2) ("If the public body denies a request in whole or in part, the public body's response shall indicate the reasons for the denial. The public body shall not be required to provide an index, or any other compilation, as to *each record or part of a record denied*." (emphasis added)), *with Vaughn*, 484 F.2d at 827, *and Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 88 (D.C.C. 2009)

34

FOIA in 1976, and it added § 10003(h)(2) to the statute in 2012, with the statutory language remaining the same to date. The Court assumes that the General Assembly was aware of the extensive federal court jurisprudence regarding the *Vaughn* Index when it determined that it would not require state public bodies in Delaware to provide what federal agencies have been required to provide for decades. Accordingly, the General Assembly appears to have consciously determined to deprive this Court of the very tool that the federal courts have found most useful in evaluating governmental privilege claims under FOIA. As a result, it is difficult to square FOIA's stated purpose of promoting governmental transparency and accountability, as the General Assembly itself stated in § 10001, with the prohibition on requiring a Delaware version of the *Vaughn* Index imposed by § 10003(h)(2).

Nonetheless, the Court must apply the unambiguous language of § 10003(h)(2). Section 10003(h)(2) only requires a public body to provide "reasons"

---

("The Vaughn Index and/or accompanying affidavits or declarations must 'provide[ ] a relatively detailed justification, specifically identif[y] the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of a withheld document to which they apply." (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 1977))). *See also Missouri Coal. for Env't Found.*, 542 F.3d at 1209 ("This Court has held that a proper *Vaughn* index 'provides a *specific factual description of each document* sought by the FOIA requestor. Specifically, such an index includes a general description of each document's contents, including information about the document's creation, such as date, time, and place. For each document, the exemption claimed by the government is identified, and an explanation as to why the exemption applies to the document in question is provided.'" (emphasis added) (citations omitted)).

35

for withholding records without the requirement of submitting an index. But, § 10003(h)(2) cannot be read in isolation. It must be read *in pari materia* with § 10005(c), which the allocates the burden of proof to justify denial of access to the public body, and § 10005(e), which provides for review of a denial by the Chief Deputy, and an appeal of the Chief Deputy's decision to the Superior Court. Harmonizing § 10003(h)(2)'s bar on indices with § 10005's burden allocation, it is clear to the Court that the General Assembly contemplated that a public body could meet its burden of proof without resorting to the production of an index or compilation of each document withheld under each FOIA exemption. It is also clear to the Court that the General Assembly contemplated that the Chief Deputy would be able fulfill her responsibility to weigh the sufficiency of those reasons in determining whether a FOIA violation had occurred, and, in turn, that this Court be able to review the Chief Deputy's decision without the considerable benefit of a *Vaughn* Index. Accordingly, the Court finds that an affidavit, along with a detailed written submission that indicates the reasons for the denial *may* be sufficient to satisfy the public body's burden. Otherwise, the public body would be in the *Catch-22* position of not being required to produce an index, but not being able to meet its burden unless it produced an index.

With those parameters in mind, the Court turns to the reasons for denial of access tendered by the Governor's Office. In its Response to the Petition, the

36

Governor's Office said it "only withheld as attorney-client privileged those communications in which legal advice was sought or provided by legal counsel to the Office."[153] The Governor's Office also said it withheld draft documents, and it cited to and quoted an Attorney General's decision explaining the exemption.[154] Finally, the Governor's Office stated that it withheld records under the executive privilege, "including email communications between the Governor and members of the Governor's Cabinet or senior policy staff."[155] The Governor's Office cited to and quoted this Court's precedent in *Guy v. Judicial Nominating Commission*[156] to support its decision.[157] To complement its Response, the Governor's Office submitted the Blount Affidavit, affirming that it withheld e-mails under the three aforementioned privileges after counsel "personally reviewed the documents."[158] The Response and Blount Affidavit show that the Governor's Office carefully applied well-recognized exemptions with a clear understanding of those exemptions

---

[153] R. at 227.

[154] R. at 227.

[155] R. at 227.

[156] 659 A.2d 777 (Del. Super. 1995).

[157] R. at 227.

[158] R. at 232. The Blount Affidavit states that "[t]he documents that the Office withheld under the 'Privilege Exemption' *include* documents in the following categories of privilege: the attorney-client privilege; the executive privilege; and the 'draft document' privilege." R. at 232–33 (emphasis added). The obvious concern is that the Governor's Office relied on more than the three asserted privileges. However, in the Response, the Governor's Office makes clear that it is only relying on three privileges. R. at 227. The Court notes that a public body should be careful with the use of inclusive language in its invocation of privileges.

when it applied them. Accordingly, the Court finds the Governor's Office has provided sufficient reasons for withholding e-mails under the Privilege Exemption to satisfy its burden of proof. Because there is no violation, the Court need not address Appellants' arguments regarding attorney's fees.

## VI.   CONCLUSION

For the foregoing reasons, the Court finds the Governor's Office did not violate FOIA. The Chief Deputy's interpretation of the Legislative E-Mail Exemption is contrary to the plain meaning of the statute, and therefore, that portion of Chief Deputy's decision is **REVERSED**. The Chief Deputy's conclusion that no FOIA violation occurred as to the Privilege Exemption is **AFFIRMED**, but on different grounds.

**IT IS SO ORDERED.**

_____
Ferris W. Wharton, J.

38