# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT E. VANELLA, on behalf of THE DELAWARE CALL, | : | |
| | : | |
| | : | C.A. No. K24A-02-002 |
| Appellant, | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTINA DURAN, in her official Capacity as FOIA Coordinator for DELAWARE DEPARTMENT OF SAFETY AND HOMELAND SECURITY, DELAWARE STATE POLICE, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Appellee. | : | |

Submitted: June 25, 2025
Decided: September 4, 2025

## OPINION

Dwayne Bensing, Esquire, and Jared Silberglied, Esquire, ACLU Foundation of Delaware, Inc., Wilmington, Delaware, *Attorneys for the Appellant.*

Joseph Handlon, Deputy Attorney General, State of Delaware Department of Justice, Wilmington, Delaware, *Attorney for the Appellee.*

**CLARK, R.J.**

Appellant Robert E. Vanella, on behalf of The Delaware Call (hereinafter, referenced interchangeably as "Mr. Vanella" or "Delaware Call") made a Delaware Freedom of Information Act ("FOIA" or the "Act") request for records from the Delaware State Police ("DSP"). DSP declined to produce the requested records. Mr. Vanella then petitioned the Chief Deputy Attorney General (hereinafter, the "Chief Deputy") to challenge DSP's denial, which the Chief Deputy sustained. Mr. Vanella then appealed the Chief Deputy's adverse decision to the Superior Court. In that appeal, he prevailed, in part, for the reasons explained in the Court's 2024 Opinion.[1]

Mr. Vanella now seeks over one hundred thousand dollars in attorneys' fees and costs on behalf of Delaware Call for what he alleges to have been a successful appeal. To this end, he contends that Delaware Call meets the definition of a "successful plaintiff of any action brought under [Section 10005]" and is therefore entitled to fee recovery under 29 *Del. C.* § 10005(d) (hereinafter, "Subsection 10005(d)" or simply "Subsection (d)"). To date, no Delaware court has determined whether a prevailing *appellant* can recover attorneys' fees under the Act.

Delaware's FOIA statute, codified at 29 *Del. C.* Ch. 100, provides two separate and distinct mechanisms (referenced interchangeably hereafter as two separate "mechanisms," "routes," or "tracks") to challenge alleged FOIA violations. The first mechanism permits a citizen to do so by filing a lawsuit. The second mechanism, at issue in this case, involves first filing an extrajudicial petition for review by the chief deputy. Then, either party may appeal the chief deputy's decision to the Superior Court with some qualifications not relevant to Mr. Vanella's motion. The first of these two mechanisms—a FOIA lawsuit—unquestionably permits fee recovery under Subsection 10005(d). The availability of potential cost and fee

---

[1] *Vanella on Behalf of Delaware Call v. Duran*, 2024 WL 5201305 (Del. Super. Dec. 23, 2024).

2

recovery under the second mechanism—the petition and appeal route—is the subject of this decision.

The parties' briefing and argument approach this motion in two ways. First, they dispute whether Subsection (d) permits an award of attorneys' fees in an appeal under any circumstances. Second, they dispute whether Delaware Call achieved "success" in the underlying appeal, which would be necessary for fee recovery.

Here, the Court need only address the threshold question—namely, whether Delaware's FOIA statute permits a successful appellant to recover attorneys' fees. The controlling provision, Subsection 10005(d), does not facially answer the question. It is ambiguous on the point because one reasonable reading would permit fee recovery for this on-the-record appeal, while another would not. When resolving that ambiguity, FOIA does not permit recovery of fees for Delaware Call's on-the-record appeal, however. It does not because (1) Subsection (d) does not plainly say so, (2) fee recovery must be strictly construed against awarding costs and fees because of the State's sovereign immunity, and (3) the intrinsic and extrinsic aids of statutory construction do not demonstrate the General Assembly's intent to permit the recovery. As a result, Delaware Call's motion for fees and costs must be denied.

## I.    PROCEDURAL BACKGROUND

Delaware Call submitted a FOIA request to DSP. DSP denied it in its entirety.[2] When doing so, it invoked several exceptions to FOIA.[3] Delaware Call then petitioned the Chief Deputy pursuant to 29 *Del. C.* §§ 10005(b) and (e) to challenge DSP's denial.[4] The Chief Deputy considered the parties' positions and determined that DSP had not violated FOIA, and that Delaware Call's requests were appropriately denied because DSP properly invoked a FOIA exemption as to all of

---

[2] *Id*. at *1.
[3] *Id*.
[4] *Id*. at *2.

3

Delaware Call's requests.[5] Delaware Call then appealed the Chief Deputy's decision to the Superior Court.[6]

On appeal, this Court affirmed the Chief Deputy's decision, in part, and reversed it, in part. The Court found that DSP had correctly invoked FOIA's exemptions to some fields of Delaware Call's request but incorrectly as to others.[7] As a result, the Court ordered DSP to produce the non-exempt material.[8]

Following the Court's order, the parties stipulated to Mr. Vanella's "Motion to Set Date to File a Motion for Attorneys' Fees and Costs" and the Court approved the order which would have been an appropriate procedural path has this been a Federal FOIA appeal.[9] Thereafter, Mr. Vanella appealed the Superior Court's decision.[10] The Supreme Court dismissed the appeal as interlocutory, however.[11] Mr. Vanella then filed the present motion for fees and costs which the Court now considers.

After briefing, the Court heard oral argument on the motion on April 11, 2025, and reserved decision.[12] Subsequently, by letter order, the Court requested the

---

[5] *Id.*

[6] C.A. No. K24A-02-002.

[7] *Vanella*, 2024 WL 5201305, at *15.

[8] *Id.* Delaware Call requested the following fields of information: (1) the names of certified DSP troopers, (2) the current salaries of troopers, (3) the current employing State agency and rank of each certified trooper, (4) the past employers and job titles of each certified trooper, (5) troopers' resumes, (6) a list of formerly certified troopers and current status, and (7) the age, sex, and race of each certified DSP trooper. Of those fields, the Court ordered production of the names of all currently employed DSP troopers, their ranks, and their salary information.

[9] D.I. 30; *See McDonnell v. United States*, 4 F.3d 1227, 1236 (3d Cir. 1993) (recognizing that even if a motion for attorneys' fees is still pending at the trial court level under Federal FOIA, such motion does not bar an appellate court's jurisdiction to consider the substance of the appeal so as to better avoid piecemeal litigation); *see also* Cornish F. Hitchcock, 1 Guidebook to the Freedom of Information and Privacy Acts § 17.5 (updated May 2025) (explaining that in federal FOIA practice, "[a]ttorney fees are normally reserved for the conclusion of a FOIA case. Even when the underlying action has been decided, a petition for attorney fees survives independently . . .. The fact that an attorney fees petition is pending, moreover, has been found not to preclude appellate review of the [trial] court's decision on the merits.") (internal quotations and citations omitted).

[10] Notice of Appeal (D.I. 31).

[11] *Vanella on behalf of Delaware Call v. Duran*, 2025 WL 733246 (Del. Mar. 7, 2025).

[12] D.I. 39.

4

parties' supplemental positions regarding whether they believed Subsection 10005(d) to be ambiguous.[13]   The Court also requested the parties' positions regarding the legislative history of formerly designated Senate Bill No. 103 of the 134th General Assembly (hereinafter, the "1988 Amendment") – which was the FOIA Amendment that added the fee recovery provision.[14]

## II.   THE PARTIES' CONTENTIONS

The parties dispute whether FOIA permits a citizen to recover attorneys' fees after a successful appeal of a chief deputy's decision denying a FOIA request.  They also dispute whether Delaware Call qualified as a successful party who could.  The positions to follow are gleaned from the parties' initial filings, oral arguments, and their supplemental briefing.

**A. Delaware Call contends that Subsection (d) unambiguously provides for fee recovery in appeals; in the alternative, it argues that the Act's legislative history demonstrates the General Assembly's intent to permit the recovery.**

Mr. Vanella contends that the Court should award Delaware Call attorneys' fees and costs pursuant to 29 *Del. C.* § 10005(d).[15]   In support, he first asserts that Subsection 10005(d) unambiguously permits it.[16]   To that end, he focuses on Subsection (d)'s language that authorizes fee recovery for "*a successful plaintiff of any action brought under this section.*"[17]   He then narrows his focus to the provision's reference to "any action."  All agree that FOIA provides no definition of

---

[13] Order (D.I. 40).

[14] 66 Del. Laws ch. 354, § 1 (1988).

[15] Under Subsection 10005(d), "[t]he court may award attorney fees and costs to a successful plaintiff of any action brought under this section."  29 *Del. C.* § 10005(d).

[16] Appellant's Suppl. Br. at 1 (D.I. 42).  During the April 11, 2025, oral argument, Delaware Call conceded that there were many ambiguities in Delaware's FOIA statute.  Delaware Call maintained, however, that Subsection 10005(d) unambiguously made fee awards available in the appeal track.

[17] 29 *Del. C.* § 10005(d) (emphasis added).

the term "action." Mr. Vanella relies on Black's Law Dictionary's definition of the term which is quite broad and applies, *inter alia*, to any civil judicial proceeding.[18] That, he contends, coupled with the availability of two mechanisms for enforcement in Section 10005—suits and appeals—demonstrates the General Assembly's intent to permit fee recovery under both tracks.

Mr. Vanella further addresses the reference to "plaintiff" in Subsection (d) by contending that the term is broad enough to encompass any party who brings a FOIA action to vindicate legal rights, which would include an appellant. For support, he turns away from Black's Law Dictionary's definition of plaintiff.[19] Rather, for that term, he asserts that according to other dictionaries, the terms "appellant" and "petitioner" are common synonyms of "plaintiff." As such, he contends that Delaware Call qualifies as a plaintiff, who brought an action, who can recover fees.

Mr. Vanella next addresses, in the alternative, the proper interpretation of Section 10005(d) should it be deemed ambiguous. First, as an intrinsic aid to interpretation within FOIA itself, he refers to the Act's declaration of policy in its preamble. Specifically, he relies on the General Assembly's statutory finding that citizens deserve easy access to public records to further a democratic society.[20] He also stresses the FOIA provision that explains "[t]oward these ends, and to further the accountability of government to the citizens, [FOIA] is adopted, and shall be construed."[21]

---

[18] Those definitions include: (1) "the exercise of a claim before a judge;" (2) "[a] civil or criminal judicial proceeding;" and (3) "any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree." ACTION, Black's Law Dictionary (12th ed. 2024) (citations omitted).

[19] *See* PLAINTIFF, Black's Law Dictionary (12th ed. 2024) (defining plaintiff as "[t]he party who brings a civil suit in a court of law.").

[20] 29 *Del. C.* § 10001.

[21] *Id.*

Mr. Vanella focuses his legislative history arguments on an amendment to FOIA adopted *twenty-two years after* the General Assembly adopted the 1988 Amendment which first added the fee recovery provision. He recognizes that there was no right to appeal a chief deputy's decision when the General Assembly passed the 1988 Amendment. Rather, then, an aggrieved citizen could only sue to challenge the decision. For that reason, Mr. Vanella directs the Court to formerly designated Senate Bill No. 283 of the 145th General Assembly (hereinafter, the "2010 Amendment")[22] – which first adopted that right to appeal a chief deputy's decision. Mr. Vanella contends that when the General Assembly added the right to appeal via the 2010 Amendment, it must have intended to expand fee recovery to include appeals.

Finally, regarding the degree of Delaware Call's success on appeal, Mr. Vanella contends that Delaware Call qualifies as a successful plaintiff because the Superior Court ordered DSP to produce some of the withheld records.[23] He contends that he need not have prevailed in every request to have succeeded. Rather, he asserts that he succeeded under Subsection (d) "because [he] prevailed on at least some issues before the court."[24] That, he submits, makes it appropriate for the Court to award cost and fees to Delaware Call.

**B. DSP contends that Subsection (d) unambiguously permits fee recovery in lawsuits, but not in appeals; in the alternative, it contends that relevant legislative history demonstrates there was no legislative intent to permit fee or cost recovery in appeals.**

DSP opposes Delaware Call's motion for fees on multiple grounds. They include the following: (1) Superior Court Civil Rule 72—which governs Superior

---

[22] 77 Del. Laws ch. 400, §§ 1–3 (2010).
[23] *Vanella*, 2024 WL 5201305, at *15.
[24] *Gannett Co., Inc. v. Bd. of Managers of the Delaware Criminal Justice Info. Sys.*, 840 A.2d 1232, 1240 (Del. 2003).

7

Court appeals—does not permit fee recovery; (2) Subsection 10005(d) expressly permits fee recovery in FOIA lawsuits only and not in appeals; (3) sovereign immunity bars any fee recovery absent express legislative authorization, which in this case does not exist; (4) Delaware Call was not a "successful plaintiff" because it failed to prevail in many of its claims; and (5) an award for over $100,000 for an appeal of a FOIA denial is grossly unreasonable and excessive.

In support, DSP first asserts that Rule 72 appeals do not permit fee shifting and that DSP, as an agency of the State of Delaware, is immune from claims for costs and attorneys' fees under the doctrine of sovereign immunity. DSP asserts that the doctrine of sovereign immunity requires the Court to narrowly construe Subsection (d) and reject fee recovery because the General Assembly did not expressly authorize it. DSP also relies on the "American Rule," followed in Delaware, which recognizes that parties to litigation generally bear their own expenses unless (1) legislation shifts that burden, or (2) a court exercises equitable jurisdiction to alter the burden.

DSP further asserts that there is no ambiguity in Subsection (d) but draws the opposite conclusion reached by Mr. Vanella. Namely, DSP contends that Delaware Call has no right to recover fees under Subsection (d) because Mr. Vanella is not a "plaintiff." For support, DSP relies upon Black's Law Dictionary for the proposition that "[t]he terms 'action' and 'suit' are nearly if not quite synonymous."[25] That, DSP contends, in addition to Subsection (d)'s use of the terms "plaintiff" and "defendant," which refer to a person suing or being sued in a civil action, excludes appeals from Subsection (d)'s fee recovery. Moreover, DSP stresses that Subsection (d)'s internal reference to remedies include only "an injunction, a declaratory judgment, writ of mandamus and/or other appropriate relief."[26] Those remedies, DSP contends, are

---

[25] ACTION, Black's Law Dictionary (12th ed. 2024) (quoting EDWIN E. BRYANT, *The Law of Pleading Under the Codes of Civil Procedure* 3 (2d ed. 1899)).
[26] 29 *Del. C.* § 10005(d).

the stuff of suits, not administrative appeals, and demonstrate the provision's limitation to lawsuits.

Turning to the legislative history of Subsection (d), DSP directs the Court to (1) audio recordings of the corresponding House debates regarding the 1988 Amendment, and (2) the 1988 Amendment's synopsis. DSP contends that this legislative history plainly demonstrates the General Assembly's intent to limit awards of attorneys' fees to only "plaintiffs," and "defendants" in FOIA *suits*. Thus, while conceding that the General Assembly waived sovereign immunity to permit fee recovery for a plaintiff in a FOIA *suit*, DSP maintains that the provision does not waive sovereign immunity to permit fee recovery after an on-the-record appeal to Superior Court.

### III. STANDARDS FOR STATUTORY INTERPRETATION AND THE AWARD OF ATTORNEYS' FEES

The focus when interpreting the meaning of a statue begins with the provision's plain language. The inquiry is resolved at the outset if the provision itself demonstrates the General Assembly's intent. Here, the parties disagree regarding what the statute plainly means. That disagreement, alone, does not make the statute ambiguous, however.[27] Rather, a statute is ambiguous where it is susceptible to two different reasonable interpretations.[28]

If a statutory provision is ambiguous, the Court must use interpretive aids to best honor the General Assembly's intent.[29] If there is an ambiguity, the Court first

---

[27] *Chase Alexa, LLC v. Kent Cnty. Levy Court*, 991 A.2d 1148, 1151 (Del. 2010) (citing *Centaur Partners, IV, v. National Intergroup, Inc.*, 582 A.2d 923, 927 (Del. 1990)).

[28] *CML V, LLC v. Bax*, 28 A.3d 1037, 1041 (Del. 2011), *as corrected* (Sept. 6, 2011) (citing *LeVan v. Indep. Mall, Inc.*, 940 A.2d 929, 933 (Del. 2007)); *see also* 82 C.J.S. *Statutes* § 348 ("A statute is ambiguous where it is susceptible to more than one reasonable interpretation or where the language used would lead to an unreasonable or absurd result.").

[29] *State v. Fletcher*, 974 A.2d 188, 196–97 (Del. 2009) (explaining that a court's role, when construing a statute, is to give effect to the policy intended by the General Assembly).

turns to intrinsic aids which are also known as the technical rules of statutory construction.[30]  Intrinsic aids of interpretation are methods that look to the internal structure of the surrounding and related provisions and apply conventional meanings to the terms used in them.[31]  In that way, if possible, the meaning of a provision can be gleaned from the composition and structure of the entire Act.[32]  Intrinsic aids also include applying the various canons of statutory construction.[33]

If intrinsic aids do not resolve the ambiguity, courts next turn to extrinsic aids of interpretation.[34]  Those aids include an act's legislative history.  As *Sutherland Statutory Construction* explains, a statute's legislative history includes circumstances (1) leading up to a bill's introduction, (2) relevant history while the legislature considered the bill, and (3) the law's post-enactment history.[35]

DSP is an agency of the State of Delaware, which means that Delaware Call's motion for fees and costs implicates an important and central benchmark: the doctrine of sovereign immunity.  Namely, the doctrine bars damage claims against the State unless the General Assembly affirmatively waives immunity.[36]  Moreover, sovereign immunity also bars awards of costs and fees against the State.[37]  To that end, Delaware courts have long recognized "[t]he well-established principle that the

---

[30] 2A Norman Singer & Shambie Singer, Sutherland Statues and Statutory Construction § 47.1 (updated 7th ed. 2024).

[31] *Id*. § 45.14.

[32] *Id*. § 47.1.

[33] *Id*.

[34] *Id*. § 48.1.

[35] *Id*.

[36] *Turnbull v. Fink*, 668 A.2d 1370, 1374 (Del. 1995).  Under Article 1, § 9 of the Constitution of the State of Delaware, "[s]uits may be brought against the state, according to such regulations as shall be made by law."

[37] *Roofers, Inc. v. Delaware Dep't of Labor*, 2014 WL 1228911, at *2 (Del. Super. Mar. 25, 2014), *aff'd*, 2014 WL 7010733 (Del. Nov. 24, 2014); *see also Wilmington Med. Ctr., Inc. v. Severns*, 433 A.2d 1047 (Del. 1981) (agreeing that it is a well settled principle of law that the doctrine of sovereign immunity "bars any award of costs against the state," absent a statutory waiver to the contrary), *overruled in part on other grounds*, *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*, 68 A.3d 665 (Del. 2013).

sovereign cannot be sued without its consent extends to the matter of costs, with the result that, absent a statute indicating its consent thereto, a state litigant may not be subjected to costs of suit for which a private litigant would be liable."[38]

A waiver of sovereign immunity must be "strictly applied and extends only to the terms of the statute."[39] Stated differently, a waiver of "sovereign immunity will be strictly construed, as to its scope, in favor of the sovereign."[40] Thus, only through a clear statutory provision, or the clearest of extrinsic evidence in the event of an ambiguity, can attorneys' fees be awarded against the State of Delaware or one of its agencies.

There is a second important benchmark that also applies to Mr. Vanella's motion, though it is subsumed here by sovereign immunity. Namely, under the "American Rule," followed in Delaware, "prevailing litigants are responsible for the payment of their own attorney's fees."[41] Generally, there are two recognized exceptions to the American Rule: legislatively provided fee-shifting and invocation of equitable principles.[42]

As to the first exception, which is the only one relevant to this motion, "the statutory exception to the American Rule requires either 'specific and explicit provisions for the allowance of attorneys' fees' or 'clear support' in the legislative

---

[38] *Roofers, Inc.*, 2014 WL 7010733, at *2 (quoting *Liability of State, or Its Agency or Board, for Costs in Civil Action to Which it is a Party,* 72 A.L.R.2d 1379, § 3 (1960)).

[39] *Tomei v. Sharp*, 902 A.2d 757 (Del. Super. 2006), *aff'd*, 918 A.2d 1171 (Del. 2007); *see also Raughley v. Dep't of Health & Soc. Servs.*, 274 A.2d 702, 703 (Del. Super. 1971) (recognizing generally that "where sovereign immunity is waived, the waiver only extends to the terms of the statute waiving it . . . [and] [w]aiver statutes are usually strictly applied.") (citations omitted).

[40] *Lane v. Pena*, 518 U.S. 187, 192 (1996); *see also Dir. of Revenue v. Wilmington Tr. Co.*, 1989 WL 25936, at *5 (Del. Super. Mar. 22, 1989) ("[A] waiver of sovereign immunity must be strictly construed.").

[41] *Goodrich v. E.F. Hutton Group, Inc.*, 681 A.2d 1039, 1043–44 (Del. 1996).

[42] *Brice v. State, Dep't of Correction*, 704 A.2d 1176, 1178 (Del. 1998) (citing *Goodrich v. E.F. Hutton Group, Inc.*, 681 A.2d at 1043–44).

history of that intent."[43]  Here, the doctrine of sovereign immunity and the American Rule overlap to prohibit an award of attorneys' fees against DSP absent (1) an explicit statutory waiver of immunity, or (2) the clearest of intrinsic or extrinsic support in the event of an ambiguity.

## IV.   ANALYSIS

Delaware's Freedom of Information Act addresses two aspects of open government: the right to examine and copy public records, and the right to expect Delaware public bodies to comply with certain open meeting requirements.  FOIA's definition of public bodies subject to these requirements is extremely broad.  It encompasses nearly all public entities in the State and its governmental subdivisions, from the agency and commission level down through ad hoc committees.[44]

The Act provides two primary mechanisms through which a citizen can enforce the obligations it places upon public bodies: (1) through a lawsuit, or (2) through a petition to the chief deputy attorney general with a further right of appeal to the Superior Court.[45]  Here, DSP is an agency of the State of Delaware, and the underlying dispute involved a request for public records.   Given those circumstances, the Act *required* Delaware Call to use the petition and appeal mechanism to resolve its dispute with DSP.[46]

As explained below, Subsection 10005(d) is ambiguous regarding whether an appellant in a FOIA appeal has the same right to cost and fee recovery as a plaintiff in a FOIA suit.   In one sense, Mr. Vanella's motion could arguably be resolved at the outset, given that ambiguity, because the doctrine of sovereign immunity requires that statutory waivers of immunity be construed strictly in favor of the sovereign.

---

[43] *Id.* (quoting *Summit Valley Indus. v. Local 112, United Bhd. of Carpenters*, 456 U.S. 717, 726 (1982); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 260 (1975)).
[44] 29 *Del. C.* § 10002(k).
[45] 29 *Del. C.* §§ 10005(a), (b), (e).
[46] 29 *Del. C.* § 10005(b).

Nevertheless, given FOIA's breadth and the Act's legislative findings that emphasize governmental accountability, the Court will delve deeper to confirm the General Assembly's intent.

For the reasons to follow, the balance of Subsection (d)'s text does not resolve the ambiguity. Nor do the balance of Section 10005, or the Act, as a whole. The Act's legislative history, however, demonstrates that the General Assembly did not intend to waive sovereign immunity to provide for cost or fee recovery in FOIA appeals.

### A. FOIA creates two distinct enforcement mechanisms; the mechanisms available to a citizen depend on the nature of the FOIA obligation and the identity of the government entity.

FOIA's enforcement provisions are contained in 29 *Del. C.* § 10005 (hereinafter, "Section 10005"). FOIA applies to public bodies of both the State of Delaware and its governmental subdivisions. The two enforcement mechanisms— the lawsuit track and the petition and appeal track—enable citizens to enforce the right to review public records and to insist that public bodies meet FOIA's open meeting requirements.

Layered over these two enforcement mechanisms are three primary and distinct enforcement scenarios contemplated by Section 10005. These scenarios turn on (1) the category of the right the citizen seeks to enforce, and (2) the identity of the public body who issued the denial or committed the transgression, be it a State-entity or governmental subdivision.

The first scenario contemplated by Section 10005 involves challenges to open meeting procedures through a suit filed in the Court of Chancery.[47] Suits to enforce

---

[47] 29 *Del. C.* § 10005(a).

these rights are available against both State entities and governmental subdivisions.[48]
Subsection (d) unquestionably permits cost and fee recovery for a citizen who prevails under this scenario.

Second, any citizen denied access to public records by a *governmental subdivision* may bring suit within 60 days of the denial.[49]  A suit of this nature is available in "a court of competent jurisdiction for the county or city in which the public body ordinarily meets or in which the plaintiff resides."[50]  The suit includes a demand for a declaratory order to provide access to public records.[51]  Subsection (d) also unquestionably permits fee recovery under this scenario.

Third and finally, "[*a*]*ny* citizen may petition the Attorney General to determine whether a violation of this chapter has occurred or is about to occur" with the right for a further on-the-record appeal to the Superior Court.[52]  In the broadest sense, this scenario applies to both State entities and governmental subdivisions.  Whether the citizen must use the petition and appeal mechanism is dependent, however, on which level of government is involved.  Namely, a citizen who requests records from a governmental *subdivision*, or asserts an open meeting violation against one, has the option to file a lawsuit *or* to pursue the petition and appeal route.  On the other hand, a citizen who alleges a FOIA violation against a *State-entity* must avail herself of the petition and appeal route, at least initially.[53]

---

[48] Subsection 10005(a) uses the term "public body" and therefore draws no distinction between State entities and governmental subdivisions when granting citizens the ability to challenge actions taken at meetings.

[49] *Id*. § 10005(b).

[50] *Id.*

[51] *Id.*

[52] *Id*. § 10005(e) (emphasis added).

[53] *Id.*  The choice of remedies under Section 10005 diverges sharply at this point, however.  Namely, either party may appeal a chief deputy's decision. There are consequences, however for a State-entity who appeals a chief deputy's decision—including the loss of right to Attorney General representation in the appeal.  *Id.*  Furthermore, on this point, if the chief deputy finds that there has been a violation of FOIA, the prevailing citizen may move the challenge to the lawsuit

The petition component of the petition and appeal track serves a screening function and provides for an initial determination regarding a possible violation. That component is codified at 29 *Del. C.* §§ 10005(b) and (e), which provide in pertinent part that:

> (b) . . . a person denied access to public records by an administrative office or officer, a department head, commission, or instrumentality of state government which the Attorney General is obliged to represent pursuant to § 2504 of this title *must* within 60 days of denial, present a petition and all supporting documentation to the Chief Deputy as described in subsection (e) of this section.[54]
>
> *     *     *
>
> (e) . . . Upon receiving a petition, the Attorney General shall promptly determine whether the petition is against an administrative office or officer, agency, department, board, commission or instrumentality of state government which the Attorney General is obliged to represent pursuant to § 2504 of this title. Every petition against an administrative office or officer, agency, department, board, commission or instrumentality of state government which the Attorney General is obliged to represent pursuant to § 2504 of this title shall be referred to the Chief Deputy Attorney General who shall, within 20 days of receiving the petition, render a written determination to the petitioner and the public body involved declaring whether a violation has occurred or is about to occur.[55]

Accordingly, as required by Subsection (b), a citizen *must* pursue the petition and appeal route before filing suit when a State entity that the Attorney General is obligated by statute to represent denies access to public records.[56] On the other hand,

---

track to be pursued by either the citizen or potentially, the Department of Justice. *Id*. At that point, the right for potential fee recovery would be triggered for a citizen who files the lawsuit.

[54] 29 *Del. C.* § 10005(b) (emphasis added).

[55] *Id*. § 10005(e).

[56] *See Brooks v. Biden*, 2012 WL 5247765, at *3 n.5 (D. Del. Oct. 23, 2012) (explaining that under 29 *Del. C.* §§ 10005(b) and (e), "a citizen alleging a FOIA violation must seek an administrative review before filing suit in court when the Attorney General is obligated to represent the public body with the sought-after public records pursuant to 29 *Del. C.* § 2504. The person denied access to public records must present a petition and all supporting documentation to the Chief Deputy

where a public body other than a State entity—e.g., a public body belonging to a political subdivisions such as a county, municipality, or school board—commits an alleged FOIA violation, the citizen may file suit directly and bypass the petition and appeal route entirely.[57]

Here, DSP is an instrumentality of State government that the Attorney General is required to represent under 29 *Del. C.* § 2504. Accordingly, Delaware Call was statutorily required to petition the Chief Deputy in this case. Consequently, because the Chief Deputy upheld DSP's denial, the Act required Delaware Call to appeal the matter to the Superior Court if it disagreed with the Chief Deputy.[58]

**B. Fee recovery in a FOIA appeal raises a question of first judicial determination in Delaware.**

The availability of attorneys' fees and costs following the Superior Court's appellate ruling on the matter is the only issue addressed in this decision.[59] Once again, under Subsection 10005(d), "the [C]ourt may award attorney fees and costs to a successful *plaintiff* of *any action* brought under this section."[60] Mr. Vanella focuses on the phrase "any action" and contends that his on-the-record appeal triggers potential fee recovery. DSP takes a less expansive view of the provision's plain meaning. It focuses on the Subsection's use of the word "plaintiff," which it contends limits fee recovery to suits authorized under Section 10005.

Several Delaware decisions have formerly considered the availability of fee recovery in FOIA *lawsuits* and confirmed their appropriateness if the plaintiff

---

Attorney General, who must then render a written determination declaring whether a violation has occurred.").

[57] 29 *Del. C.* § 10005(b).

[58] *See* 29 *Del. C.* § 10005(d) (following the chief deputy's decision, "the petitioner . . . may appeal an adverse decision on the record to the Superior Court[.]").

[59] Procedurally, the Superior Court's appellate ruling is the final administrative remedy statutorily provided for under 29 *Del. C.* §§ 10005(b) and (e).

[60] 29 *Del. C.* § 10005(d) (emphasis added).

prevails.[61]  Neither the parties nor the Court identified a Delaware decision that resolved the question in the appeals context, however.  To date, there have been three Delaware decisions that touched on the question of fee recovery in FOIA appeals but none of them resolved the issue.

First, in *Flowers v. Office of the Governor*,[62] the Superior Court considered an appeal of a chief deputy determination that no FOIA violation had occurred (although the chief deputy attempted to remand the matter to the Governor's Office for further review).  The citizens instead appealed the matter to the Superior Court.[63]  There, the Governors' Office contended there was no FOIA violation.  It nevertheless argued, in the alternative, that Subsection 10005(d) provided for no fee recovery in the event there was a violation.[64]  In support, the Governor's Office emphasized there, as DSP does here, that Subsection 10005(d) uses the terms "plaintiff" and "defendant" as opposed to "appellant" and "appellee."[65]  The appellants in *Flowers* countered that an appeal to the Superior Court from a chief deputy's decision constituted an "action" within the meaning of the statute which provided the court the discretion to award them attorneys' fees.[66]

Ultimately, the Superior Court found no FOIA violation in *Flowers*.  As a result, it appropriately declined to resolve the question of the availability of fee recovery in a FOIA appeal.[67]  The court nevertheless recognized that the Act

---

[61] *See e.g.*, *RiseDelaware Inc. v. DeMatteis*, 2023 WL 1859735 (Del. Super. Feb. 8, 2023); *State ex rel. Biden v. Camden-Wyoming Sewer & Water Auth.*, 2012 WL 5431035 (Del. Super. Nov. 7, 2012); *Hoster v. Poppiti*, 1994 WL 680012 (Del. Super. Sept. 19, 1994).
[62] 167 A.3d 530 (Del. Super. 2017), *as corrected* (Aug. 22, 2017).
[63] *Id*. at 538.
[64] *Id*. at 541.
[65] *Id*.
[66] *Id*.
[67] *Id*. at 549–50.

"presents a number of interpretive issues. Some . . . necessarily must await future litigation." [68]

Soon after *Flowers*, the Superior Court again acknowledged the issue in *Rudenberg v. Chief Deputy Attorney General of Department of Justice*.[69] In that decision, the Superior Court also declined to "reach the statutory interpretation issue of whether an appellant is a 'plaintiff,' or whether an administrative appeal is included in the phrase 'any action' pursuant to § 10005(d)."[70] Instead, the Court bypassed the threshold issue of whether the appellants could recover fees by focusing on whether the appellants' *de minimis* success made them prevailing parties.[71] In other words, the court in *Rudenberg* declined to address the threshold issue by resting its decision on the lack of the moving party's success.[72]

Finally, the Delaware Supreme Court remanded a FOIA appellate decision to the Superior Court in *Judicial Watch, Inc. v. University of Delaware*.[73] In *dicta,* the Court passively referenced the potential statutory availability of attorneys' fees for a FOIA appellant. There, the Supreme Court also rested its decision on the measure of the appellants' degree of success, however, and did not consider whether an appellant qualified as a "plaintiff" under Subsection (d).[74] When doing so, the Court seemed to passively assume the availability of fees for an appellant without further examining the issue. Namely, it remanded the matter to the Superior Court with the observation that "[a]ppellants [we]re not *yet* entitled to fees" because they had "not *yet* succeeded in their claims that the University committed a FOIA violation."[75] The

---

[68] Id. at 533.
[69] 2017 WL 7000854 (Del. Super. Dec. 8, 2017).
[70] *Id*. at n.39.
[71] *Id*. at *11.
[72] *Id*.
[73] 267 A.3d 996 (Del. 2021).
[74] *Id*. at 1013; 29 *Del. C.* § 10005(d).
[75] *Id*. (emphasis added).

Court's decision in *Judicial Watch* went no further. On remand, the Superior Court found that the public body committed no FOIA violation, so neither it, nor the Supreme Court on appeal, reached the issue of whether Subsection (d) provides for fee recovery for a successful appellant.[76]

On balance, the *Flowers* decision did not address the issue because the court decided the merits of the appeal adversely to the appellant. Separately, the *Rudenberg* decision declined to address the threshold issue of availability of fee recovery because that court found the appellant did not prevail. Finally, the Delaware Supreme Court in *Judicial Watch* made only a passing reference to attorneys' fees not "yet" being available without examining the issue further. As a result, this Court must look to Subsection (d)'s text to either apply its plain meaning or recognize its ambiguity as an issue of first judicial determination.

### C. Subsection 10005(d) is ambiguous regarding whether appellants can recover attorneys' fees.

To resolve questions of law resting upon a statute's language, the Court must apply the well settled rules of statutory construction.[77] The Court cannot manipulate a statute's language to reach a result the General Assembly did not clearly intend.[78] At the outset, courts look to the language of the statute itself, because "a statute draws its meaning from its text."[79] If a statute is determined to be unambiguous

---

[76] *Judicial Watch. v. Univ. of Delaware*, 2022 WL 10788530, at *3 (Del. Super. Oct. 19, 2022), *aff'd sub nom. Judicial Watch, Inc. v. Univ. of Delaware*, 300 A.3d 1270 (Del. 2023).

[77] *Dewey Beach Enterprises, Inc. v. Bd. of Adjustment of Town of Dewey Beach*, 1 A.3d 305, 307 (Del. 2010) ("The rules of statutory construction are well settled.").

[78] *See Price v. All Am. Eng'g Co.*, 320 A.2d 336, 342 (Del. 1974) (explaining that it is impermissible for a court "to imbue a statute with a meaning in excess of, or contrary to, legislative design[.]").

[79] 82 C.J.S. *Statutes* § 393. The United States Supreme Court has recognized this principle through the following: "the meaning of the statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the courts is to enforce it according to its terms." *Caminetti v. U.S.*, 242 U.S. 470, 485 (1917). Moreover, the Delaware Supreme Court has similarly recognized that "[t]he most important consideration for a court in interpreting a statute is [the language] the General Assembly used in writing [the statute]." *Manti*

19

"then there is no room for judicial interpretation and 'the plain meaning of the statutory language controls.'"[80] The fact that the parties disagree about the meaning of a statute does not render it ambiguous.[81] Rather, a statute is considered ambiguous when it is susceptible to two or more reasonable interpretations or where "a literal reading of its terms 'would lead to an unreasonable or absurd result not contemplated by the legislature.'"[82]

Here, Subsection 10005(d) is ambiguous because it is susceptible to more than one reasonable interpretation. This ambiguity was tacitly recognized in both the *Flowers* and *Rudenberg* decisions because of two internally inconsistent references in Subsection (d)—a "successful plaintiff" in "any action under this section."[83]

On one hand, as Delaware Call correctly recognizes, the term, "action" is defined by Black's Law Dictionary as "[a] civil or criminal judicial proceeding."[84] Both enforcement mechanisms—lawsuits and appeals—are judicial proceedings brought under Section 10005 that qualify as "actions." Therefore, one reasonable interpretation of Subsection (d) is that an appellate proceeding following a chief deputy's decision qualifies for potential attorneys' fees because it is an "action" under Section 10005.

On the other hand, when specifying who may be entitled to an award of attorneys' fees, Subsection (d) uses the phrase "successful *plaintiff*." A "plaintiff" is defined in Black's Law Dictionary as "[t]he party who brings a civil suit in a court of law."[85] In contrast, an appellant is defined in Black's Law Dictionary as "[a] party

*Holdings, LLC v. Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1214 (Del. 2021) (internal quotation omitted).

[80] *Lawson v. State*, 91 A.3d 544, 549 (Del. 2014) (quoting *CML V, LLC*, 28 A.3d at 1041).

[81] *Centaur Partners, IV*, 582 A.2d at 927.

[82] *LeVan*, 940 A.2d at 933 (quoting *Newtowne Vill. Serv. Corp. v. Newtowne Rd. Dev. Co.,* 772 A.2d 172, 175 (Del. 2001)).

[83] 29 *Del. C.* § 10005(d) (emphasis added).

[84] ACTION, Black's Law Dictionary (12th ed. 2024).

[85] PLAINTIFF, Black's Law Dictionary (12th ed. 2024).

who appeals a lower court's decision."[86]  To that end, only the parties who *sue* to seek to enforce FOIA obligations upon a public body in the Court of Chancery or the Superior Court qualify as "plaintiffs."  Furthermore, Subsection (d) refers to the "defendant," rather than an appellee, when identifying what prevailing public bodies have the right to recover fees from citizens who file frivolous or harassing actions.  Thus, the General Assembly's discriminate use of the words, "plaintiff" and "defendant," when authorizing fee recovery, provides what could reasonably be a purposeful distinction regarding who may recover attorneys' fees upon success.[87]  Finally, Subsection (d) internally references several remedies including an injunction, declaratory judgment, writ of mandamus or other appropriate relief.  The specified remedies in this list are available only in lawsuits, not in on-the-record appeals.  Those references provide further support to DSP's position that the provision is limited to only lawsuits.

As a result, Subsection 10005(d) is ambiguous regarding whether an appellant can recover attorneys' fees under the Act.  Given this ambiguity, the Court must apply the various aids to interpretation to determine whether the General Assembly intended to affirmatively waive sovereign immunity to permit such recovery.[88]

**D. Subection 10005(d) does not authorize an award of attorneys' fees and costs to an *appellant* who achieves success in an appeal.**

As described above, there are two categories of interpretive aids for ambiguous statutes.  They include first applying intrinsic aids of construction and then turning to the extrinsic.  The Delaware Supreme Court has explained that approach as follows:

---

[86] APPELLANT, Black's Law Dictionary (12th ed. 2024).

[87] In a general sense, a *plaintiff* commences a suit by filing a complaint and praecipe.  *See* e.g. Super. Ct. Civ. R. 3.  Alternatively, an *appellant* initiates an appeal in a higher court to seek review of the determination of a lower decision maker or tribunal.  An appeal generally commences upon the filing of a notice of appeal.  *See* Super. Ct. Civ. R. 72(b).

[88] *Smith v. Bunkley*, 171 A.3d 1118, 1122–23 (Del. Super. 2016), *aff'd*, 171 A.3d 1117 (Del. 2017).

[f]irst, the statute must be read as a whole in a manner that will promote its purposes. Second, courts should consider the statute's history and examine the text of the statute and draw inferences concerning the meaning from its composition and structure[.][89]

Here, the surrounding text in Subsection (d), Section 10005, and the Act as a whole, provide no context to resolve the ambiguity. As to the surrounding text in Subsection (d), the remedies specified—an injunction, a declaratory judgment, or a writ of mandamus—are, on one hand, remedies available only through lawsuits. Nevertheless, Subsection (d) also references "other appropriate relief." That phrase could reasonably include appellate remedies which undercuts DSP's argument that the context provided in the first sentence in Subsection (d) resolves any ambiguity in its favor. Furthermore, when broadening the context to Section 10005, there is likewise no contextual support to resolve the ambiguity.

Turning to the Act as a whole, FOIA's definition section, 29 *Del. C.* § 10002, provides no definition for the terms "plaintiff" or "action" as they are used within Section 10005. Nor can any affirmative meaning for those terms be ascertained by examining the remaining sections of FOIA or examining Subsection (d) in the context of the entire Act.[90] Accordingly, neither considering Section 10005 in isolation, nor the Act as a whole, intrinsically resolve the ambiguity.

The Court turns next to the primary extrinsic aid for interpretation: legislative history. In Delaware, the available legislative history to draw on is sparse.[91] A bill's synopsis is one source.[92] Floor debates, committee debates, and journal entries are other sources. The history surrounding subsequent amendments may also be helpful.

---

[89] *Rubick v. Sec. Instrument Corp.*, 766 A.2d 15, 18 (Del. 2000) (internal quotations and citations omitted).
[90] *See generally* 29 *Del. C.* §§ 10001 et seq.
[91] *Salama v. Simon*, 328 A.3d 356, 388 (Del. Ch. 2024).
[92] *Bd. of Adjustment of Sussex Cnty. v. Verleysen*, 36 A.3d 326, 332 (Del. 2012); *Carper v. New Castle County Bd. of Ed.,* 432 A.2d 1202, 1205 (Del. 1981).

Here, the Court looks to the legislative history surrounding two relevant amendments to the Act.  They are (1) FOIA's 1988 Amendment, its relevant synopsis, and the corresponding House and Senate debates; and (2) the 2010 Amendment to FOIA and its corresponding House and Senate debates.

First, the 1988 Amendment amended Subsection (d) by introducing the provision that permits an award of attorneys' fees and costs.  Prior to the 1988 Amendment, the remedies permitted under Subsection 10005(d) included only "an injunction, a declaratory judgment, writ of mandamus and/or other appropriate relief" with no right to recover fees or costs.[93]  The 1988 Amendment added the following language to Subsection (d) which remains unchanged to present:

> [t]he Court may award attorney fees and costs to a successful plaintiff of any action brought under this section.  The Court may award attorney fees and costs to a successful defendant, but only if the Court finds that the action was frivolous or was brought solely for the purpose of harassment.[94]

The appellate mechanism enabling an on-the-record appeal to Superior Court did not yet exist when the General Assembly added this language.[95]  Rather, at the time, Section 10005 provided citizens two tracks to seek redress for FOIA violations.  They could either: (1) file suit in response to an alleged violation; or (2) petition the Attorney General to determine whether a violation had occurred or was about to occur.  Under the latter track, depending upon the chief deputy's decision, citizens could then either file suit or ask the Attorney General to file suit on their behalf.[96]  Thus, at the time the 1988 Amendment added the attorneys' fees provision, the only "actions" that FOIA contemplated were *suits* filed by *plaintiffs*.  It inescapably

---

[93] 65 Del. Laws ch. 191, § 13 (1985).
[94] 66 Del. Laws ch. 354, § 1 (1988).
[95] The "on-the-record appeal" mechanism was later added to FOIA by the 2010 Amendment, as will be discussed below.
[96] 66 Del. Laws ch. 354, § 1 (1988).

follows that General Assembly could not have then intended attorneys' fees to be an appellate remedy because no such procedure existed.

The 1988 Amendment's synopsis further confirms that FOIA limited fee recovery to lawsuits. Namely, it provided:

> [t]his bill authorizes awards of attorneys fees and costs in Freedom of Information Act *suits.* It *also* authorizes citizens to petition the State Attorney General or to file suit when a violation has occurred or may occur. The Attorney General may also file suit when a violation has occurred or may occur.[97]

This reference to awarding attorneys' fees in suits, and then "also [authorizing] citizens to petition the Attorney General" supports a separation between the two mechanisms—suit versus petition. To that end, the synopsis distinctly reflects the intent to authorize attorneys' fee awards in only "Freedom of Information Act *suits.*"[98] The absence of such corresponding language in the synopsis' reference to petitions demonstrates a clear demarcation of intent.[99]

The House debates surrounding the 1988 Amendment provide further support regarding a lack of intent.[100] There, the House floor manager's comments on the bill referenced fee recovery in lawsuits only. As Representative DiPinto explained:

> [t]he objectives of the bill are twofold. Firstly, to promote prompt resolution of any alleged violations to the Freedom of Information Act by reference to the Attorney General for an opinion and giving him a 30-day period to render that opinion. This keeps then the specter of

---

[97] Del. S.B. 103 syn., 134th Gen. Assem. (1988).

[98] *Id*. (emphasis added).

[99] Under Delaware jurisprudence, "it is well established that 'a court may not engraft upon a statute language which has clearly been excluded therefrom.'" *Leatherbury v. Greenspun*, 939 A.2d 1284, 1291 (Del. 2007) (quoting *In re Adoption of Swanson*, 623 A.2d 1095, 1097 (Del. 1993). Additionally, under the maxim of statutory interpretation *expression unius est exclusion alterius*, "the expression of one thing is the exclusion of another." *Brown v. State*, 36 A.3d 321, 325 (Del. 2012). This means that "where a form of conduct, the manner of its performance and operation, and the persons and things to which it refers are affirmatively or negatively designated, there is an inference that all omissions were intended by the legislature." *Id*.

[100] The Senate debates did not include relevant references to attorneys' fees recovery.

long-term problems or potential problems from alleged violations of the Freedom of Information Act and gives it a prompt resolution. Secondly, in those areas where a body which is required to adhere to the provisions of the Freedom of Information Act either persists in violating it or is perceived to persist in violating it, citizens then have an opportunity to seek redress, and they can do it by two mechanisms. They can file a lawsuit through the auspices of the Attorney General on their behalf, or they can file a *suit* themselves. And *if indeed they take the latter course*, this bill gives provision for the *plaintiffs* to request payment of costs and fees from the defendant in the event that *the suit* is successful. [101]

Representative Di Pinto continued:

[t]he award of fees and costs I know represents a concern. It is not mandatory. It will be done only at the discretion of the court. And historically, courts have done this very reluctantly and in a conservative fashion. On the other hand, an award can indeed be appropriate where *the defendant* persistently and knowingly violates law. And I think it's certainly appropriate to have some redress in those instances. [102]

On balance, when the General Assembly added Subsection (d) to the Act in 1988, (1) no appeal of a chief deputy decision existed, (2) all legislative history demonstrated the General Assembly's intent to limit fee recovery to lawsuits, and (3) the House of Representative's floor debate referenced the skepticism of many legislators about authorizing cost and fee recovery in even lawsuits. To interpret Subsection (d) as Mr. Vanella suggests would produce a result that the 134th General Assembly did not conceive of, let alone intend.

Mr. Vanella counters by relying on the legislative history that surrounds the 2010 Amendment to FOIA,[103] which he contends demonstrates the requisite

---

[101] D.I. 43, House Debate 1 on S.B. 103 at 1:35–2:42, 134th Gen. Assem. (Apr. 26, 1988) (statement of floor manager, Representative Joseph G. Di Pinto, explaining generally the objectives of the 1988 Amendment) (emphasis added).
[102] *Id*. at 2:45–3:14 (emphasis added).
[103] 77 Del. Laws ch. 400, §§ 1–3 (2010).

legislative intent to waive sovereign immunity for appeals. In 2010, the General Assembly added the on-the-record appeal component to FOIA—some twenty-two years after the 1988 Amendment introduced the attorneys' fee provision for suits.[104] The 2010 Amendment further addressed possible conflicts of interest that could arise on appeal when a chief deputy decides adversely to a State entity that the Attorney General's office would otherwise be required to represent on appeal.[105]

Mr. Vanella's reading of the 2010 Amendment's legislative history is incorrect. Rather, that history supports only DSP's position because the General Assembly had the opportunity to amend Subsection (d) in the 2010 Amendment to expressly provide for fee recovery in appeals but declined to do so.[106] As explained above, the 1988 Amendment did not permit fee recovery if a citizen prevailed before a chief deputy. When the 2010 Amendment added an appeal right to follow a chief deputy petition, it retained the term "plaintiff" as it was understood in 1988 – which was the litigant who filed a lawsuit.

House and Senate debates on the 2010 Amendment also support this reading. First, the Senate debate focused on the inherent costs thrust upon a citizen who is

---

[104] *Id.*

[105] *Id.*

[106] For further examples of express intent as to a party's ability to recover fees, Delaware FOIA's federal counterpart states that "the court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the *complainant* has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). Likewise, neighboring states' FOIA equivalents—i.e., Pennsylvania's Right-to-Know Law and New Jersey's Open Public Records Act—use more encompassing terms when stating who is eligible to receive an award of attorneys' fees. *See* 65 P.S. § 67.1304(a) ("If a court reverses the final determination of the appeals officer or grants access to a record after a request for access was deemed denied, the court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof to a *requester*[.]"); N.J.S.A. 47:1A-6 ("A *requestor* who prevails in any proceeding may be entitled to a reasonable attorney's fee. While the court or Government Records Council may award a reasonable attorney's fee to a *prevailing party* in any proceeding, if the public agency has been determined to have unreasonably denied access, acted in bad faith, or knowingly and willfully violated P.L.1963, c. 73 (C.47:1A-1 et seq.), then the court or Government Records Council shall award a reasonable attorney's fee.").

26

forced to file *suit* to challenge an alleged FOIA violation.[107]  Nowhere did the senators' debate mention expanding fee recovery for appeals.  Rather, the debate supports the legislative understanding that a suit could cost a citizen several thousand dollars while the petition and appeal track would be quicker and cheaper.[108]  To that end, as the Senate floor manager Senator Peterson explained, the Amendment provided citizens the ability to petition the Attorney General's Office to challenge a State entity's action and appeal that decision notwithstanding the Attorney General's obligation to represent that entity.[109]  When further expounding on the appellate option, Senator Peterson emphasized her understanding that "the on the record part is important because that's what *takes out the expense of it all* . . . and the cost of filing the appeal is $175."[110]

Likewise, in the House debate, Speaker Gilligan floor managed the bill. There, he similarly explained that the most the appeal process would cost a citizen is $175.[111]  Nowhere in the House debates, or in the Bill's synopsis, was there a reference to expanding fee recovery to appeals.  Rather, the testimony in the House, as in the Senate, demonstrated the legislative impression that the petition and appeal route would be cheaper than filing suit, which would make fee recovery inappropriate under that route.  In summary, none of the contemporaneous legislative history surrounding the 1988 or the 2010 Amendment supports that which would have been necessary to include fee recovery in appeals—clear, purposeful and affirmative action by the General Assembly to waive sovereign immunity.

---

[107] D.I. 44, Senate Debate on S.B. 283 at 1:47, 145th Gen. Assem. (Jun. 29, 2010).
[108] *Id*. at 2:01.
[109] *Id*. at 2:38.
[110] *Id*. at 3:31–4:00 (emphasis added).
[111] D.I. 44, House Debate on S.B. 283 at 1:43–2:10, 145th Gen. Assem. (Jun. 22, 2010).

## V. CONCLUSION

For the foregoing reasons, Delaware's Freedom of Information Act does not permit an award of costs and attorneys' fees following a Superior Court on-the-record appeal. As a result, Mr. Vanella's motion for costs and fees must be denied regardless of whether Delaware Call achieved success in its appeal.