**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES<br>UNION OF DELAWARE, | ) | |
| | ) | |
| Appellant, | ) | C.A. No. K25A-01-001 RLG |
| | ) | |
| v. | ) | |
| | ) | |
| TIM MARTIN, in his official<br>capacity as FOIA Coordinator for<br>the DELAWARE DEPARTMENT<br>OF CORRECTIONS,[1] | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Appellee. | ) | |

Submitted: December 30, 2025
Decided: May 18, 2026


**MEMORANDUM OPINION**


*Upon Appeal of Chief Deputy Attorney General*
*Opinions No. 24-IB50 and 24-IB52 – REVERSED in part.*

Andrew Bernstein, Esquire (argued) and Dwane Bensing, Esquire, American Civil Liberties Union of Delaware, Wilmington, Delaware. *Attorneys for Appellant.*

Michael Gordon, Esquire (argued), and Abigail de Uriarte, Esquire, Department of Justice, Wilmington, Delaware. *Attorneys for Appellee.*

**GREEN-STREETT, J.**

---

[1] This litigation was instituted against Tim Martin, in his official capacity as FOIA Coordinator for The Delaware Department of Corrections. The Court is aware that the proper name is the Delaware Department of Correction.

1

## I.    Introduction

An organization submitted two requests for information from a State agency under Delaware's Freedom of Information Act.  The State agency denied those requests, positing the agency did not maintain such records and any related records it did maintain were exempt from disclosure.  The Attorney General's office upheld those denials, prompting the requesting organization to file this appeal.  As the agency incorrectly withheld public information under Delaware's Freedom of Information Act, the agency's denial of the requests is **REVERSED in part**.

## II.    Factual and Procedural Background

### A.    The "Eligible Voter Request"

The American Civil Liberties Union of Delaware ("ACLU") endeavors to assist "incarcerated people in accessing their civil rights," including the right of incarcerated people to vote in elections.[2]  To that end, ACLU filed two requests for information from the Delaware Department of Correction ("DOC") under 29 Del. C. §§ 10001-10008, Delaware's Freedom of Information Act ("FOIA").[3]  The first request (the "Eligible Voter Request") sought the number of people incarcerated: 1) with a lead charge of a misdemeanor, or 2) on pre-trial detention.[4]  For individuals

---

[2] Opening Br. at 1.

[3] Id.

[4] Id. at 5.

with those designations, ACLU also requested their name, State Bureau of Identification ("SBI") number, and initial date of incarceration.[5] ACLU desired that information to facilitate contacting those incarcerated individuals who might be eligible to vote.[6]

DOC denied the Eligible Voter Request, citing an exemption under FOIA that applies to "any records pertaining to pending or potential litigation which are not records of any court."[7] The "pending or potential litigation" concerning DOC stemmed from litigation in which ACLU represented the Prisoners Legal Advocacy Network in a lawsuit against DOC and the Delaware Department of Election ("DOE") filed in the United States District Court for the District of Delaware.[8] The District Court dismissed that litigation on August 23, 2024.[9] ACLU indicated to DOC "that it did not intend to appeal the dismissal of the litigation."[10]

After issuing its denial, DOC informed ACLU that "[t]he Department of Correction and the Department of Election are working on the logistics to identify

---

[5] Id.

[6] Id. at 6.

[7] R. at 6; 29 Del. C. § 10002(o)(9) (hereinafter, the "Litigation Exemption").

[8] Opening Br. at 6.

[9] Id.

[10] Id. (internal quotations omitted).

registered voters within DOC custody without violating confidentiality requirements."[11] DOE reported, "[b]ased on our review, and work in collaboration with DOC, we have initially determined that there are currently 990 incarcerated individuals who are registered to vote."[12] DOE further clarified that all 990 of those individuals were "eligible to vote in the upcoming General Election."[13]

ACLU filed a petition under 29 Del. C. § 10005 to the Attorney General's Office seeking a reversal of DOC's denial of the Eligible Voter Request.[14] Responding to ACLU's petition, DOC reiterated its belief that, because of the recent litigation between the parties, the requested information fell under the Litigation Exemption.[15] Additionally, DOC argued "it does not keep the requested records in a manner that would provide accurate information concerning voter eligibility."[16] DOC further asserted the records were protected under 29 Del. C. § 10002(o)(6), which exempts "any records specifically exempted from public disclosure by statute or common law" (the "Statutory Exemption").[17] DOC contended 11 Del. C. §

---

[11] R. at 21.

[12] Id. at 17.

[13] Id. at 16.

[14] Opening Br. at 8.

[15] R. at 63-64.

[16] Id. at 65.

[17] R. at 66.

4322(a) and § 8513(d) "prohibit the disclosure of the requested records under these circumstances."[18]

The Office of the Attorney General issued Attorney General Opinion No. 24-IB50 (the "Eligible Voter Opinion") on November 26, 2024, finding DOC did not violate FOIA by denying the Eligible Voter Request.[19]  The Eligible Voter Opinion found DOC "met its burden to justify the denial of access to these records" by attesting "it does not have the requested records."[20]  The attestation referenced by the Eligible Voter Opinion – an affidavit provided by Jessica Cline, the Deputy Chief of Planning, Research, and Reentry (the "First Cline Affidavit") – averred:

> I can attest that the current DACS[21] system, while valuable for many purposes, is not equipped with a designated search function that could produce the above-requested information.  Past attempts to provide similar information have necessitated special programming and have often resulted in inaccurate reports.  The way information is loaded into DACS, whether through human input or document uploads, combined with the data structure of the database, does not lend itself to the accurate generation of the requested information.  Therefore, any report generated would require manual verification for accuracy,

---

[18] Id.

[19] Id. at 131.

[20] Id. at 133.

[21] The First Cline Affidavit identifies DACS as "the DOC's electronic records database."  See R. at 125.

5

often by cross-referencing with the criminal records database of other agencies like DELJIS.[22]

Notably, the First Cline Affidavit *did not* address ACLU's request for the number of people currently incarcerated on pretrial detention.[23] The Eligible Voter Opinion did not discuss the other exemptions cited by DOC substantively.[24] Recognizing that DOC did not assert the records did not exist until ACLU petitioned the Attorney General, the Eligible Voter Opinion cautioned DOC to "fully assert its basis for denying the request in its response to the requesting party."[25] The Eligible Voter Opinion did not discuss a second affidavit provided by DOC – from Shane Troxler, the Deputy Commissioner – in which Mr. Troxler averred DOC never informed ACLU it would provide any data related to the Eligible Voter request.[26]

---

[22] R. at 125.

[23] Id. (The First Cline Affidavit recites three of ACLU's four requests in the Eligible Voter Request. It omits any reference to pretrial detention.).

[24] Id. at 133 (The Eligible Voter Opinion included DOC's asserted exemptions in its recitation of DOC's arguments, but did not address those exemptions in its "Discussion" section or provide commentary on the validity of those exemptions.).

[25] Id.

[26] Id. at 129.

## B.     The "Elderly Incarcerated Request"

ACLU's second FOIA request sought "the number of incarcerated individuals within certain age ranges above 60" (the "Elderly Incarcerated Request").[27]  For each range, ACLU also requested "the names, SBI numbers, and dates of incarceration for each individual."[28]  DOC provided the number of incarcerated individuals within each age range as of June 30, 2024, but refused to provide any identifying information about those individuals.[29]  In its denial, DOC stated it "does not provide personal identification information to parties outside of the department."[30]

In response to ACLU's request that DOC provide the specific grounds for its denial, DOC cited an exception under FOIA for "criminal files and criminal records, the disclosure of which would constitute an invasion of personal privacy" (the "Criminal Records Exemption").[31]  Additionally, DOC cited the Statutory

---

[27] Opening Br. at 10.  The ACLU identified the following age ranges: 76 and older; 71-75; 66-70; and 61-65.  See Opening Br. at 10 n.9.

[28] Id.

[29] R. at 140-142.

[30] Id.

[31] Id. at 139; see 29 Del. C. § 10002(o)(4).

Exemption.[32]  DOC asserted disclosure of any identifying information would violate 11 Del. C. § 4322(a); § 8501; and § 8513(d).[33]

ACLU again filed a petition with the Attorney General's Office, asking it to reverse DOC's denial.[34]  In response, DOC asserted providing the information sought by the Elderly Incarcerated Request would be "analogous to placing them on mailing lists," constituting an invasion of privacy.[35]  DOC provided a second affidavit from Ms. Cline (the "Second Cline Affidavit"), wherein Ms. Cline averred:

> I can attest that DACS is the Delaware Department of Correction's case management database.  When an offender enters DOC custody, DACS populates the offender's criminal record by exchanging information with the courts, the Delaware Criminal Justice Information System, and the offender's interview at intake.  This information is validated and exchanged and either becomes the offender's criminal record or enhances the criminal record stored and maintained by the State Bureau of Identification.[36]

The Office of the Attorney General issued an opinion finding DOC met its burden in denying the Elderly Incarcerated Request on December 20, 2024 (the

---

[32] R. at 139; see 29 Del. C. § 10002(o)(6).

[33] R. at 139.

[34] Opening Br. at 10.

[35] R. at 174.

[36] Id. at 177.

8

"Elderly Incarcerated Opinion").[37] The Elderly Incarcerated Opinion found DOC properly withheld the requested information under 29 Del. C. § 10002(o)(6), the Statutory Exemption.[38] The Elderly Incarcerated Opinion further reasoned that 11 Del. C. § 4322(a) prohibited the disclosure of "supervision history and case records."[39] The Elderly Incarcerated Opinion also found that, under 11 Del. C. § 8513(d), criminal history information can be disclosed only by the State Bureau of Investigation.[40] The Elderly Incarcerated Opinion concluded, "inmate names, SBI numbers, and incarceration dates qualify as identifiable descriptors and information under the definition of criminal history record information."[41]

### C. The instant appeal

ACLU filed the instant appeal, seeking reversal of both the Eligible Voter Opinion and the Elderly Incarcerated Opinion.[42] ACLU submitted its Opening Brief on March 31, 2025.[43] DOC filed its Answering Brief on April 21, 2025.[44] ACLU

---

[37] Id. at 181.

[38] R. at 182.

[39] Id. at 183.

[40] Id.

[41] Id. at 183-184.

[42] Opening Br. at 1.

[43] Id.

[44] Ans. Br. at 1.

filed its Reply on May 2, 2025.[45]  The Court held oral argument on the matter on December 3, 2025.[46]

## III.  Standard of Review

Under 29 Del. C. § 10005(b), a petitioner wishing to appeal a denial of a FOIA request by the Office of the Attorney General may appeal that decision to this Court. An appeal of a FOIA request occurs "on the record."[47]  "The burden of proof [rests with] the custodian of the records to justify the denial of access to records."[48]  When interpreting a statute such as FOIA, "the most important consideration for a court [ ] is the language the General Assembly used in writing the statute."[49]

## IV.  Analysis

FOIA appeals proceed through a somewhat unique process.  This Court reviews FOIA decisions "on the record."  As the proceedings below consist of two FOIA requests, two denials, and two opinions from the Office of the Attorney

---

[45] Reply at 1.

[46] Oral Arg. (D.I. 16) (hereinafter, "Tr. at __").

[47] Flowers v. Office of the Governor, 167 A.3d 530, 540 (Del. Super. 2017) (internal quotations omitted) (quoting 29 Del. C. § 10005(d)).

[48] 29 Del. C. § 10005(c).

[49] Judicial Watch, Inc. v. Univ. of Delaware, 267 A.3d 996, 1004 (Del. 2021) (internal quotations omitted) (quoting Salzberg v. Sciabacucchi, 227 A.3d 102, 113 (Del. 2020)).

General, those proceedings produced a relatively sparse record.[50] That sparse record requires the Court to grant "significant" deference to DOC's "representations regarding whether it possesses relevant records."[51] This Court's review of FOIA exemptions, however, "owes no deference" to the opinions from the Office of the Attorney General.[52] "In the FOIA context, the statute's enumerated exceptions create a barrier to the public's right to access information[,] and must be narrowly construed."[53]

### A. DOC possessed records that are responsive to the Eligible Voter Request

The Eligible Voter opinion upheld DOC's denial of the Eligible Voter Request on the sole basis that "DOC provided sworn statement attesting that it does not have the requested records."[54] Based on the First Cline Affidavit, DOC represented that it could not generate a list of individuals with a lead charge of a misdemeanor

---

[50] See Vanella on Behalf of Delaware Call v. Duran, 2024 WL 5201305, at *3 (Del. Super. Dec. 23, 2024), appeal dismissed, 339 A.3d 1228 (Del. 2025) ("There are no adversarial proceedings in the FOIA context, however. In their absence, the statute leaves many questions unanswered.").

[51] Id. at *4.

[52] Id.

[53] Id. at *3.

[54] R. at 133.

offense.[55] Notably, the First Cline Affidavit *does not* aver that DOC cannot create a list of individuals incarcerated on pre-trial detention.[56]

During oral argument, DOC clarified its position regarding the existence of the requested records. DOC stated it could not produce an *accurate* list of incarcerated individuals eligible to vote.[57] DOC also could not perform a broad search of its database for individuals "with a lead charge of misdemeanors."[58] DOC represented that, to determine if an individual retained his or her right to vote, DOC would have to perform "a lot of manual verification to compare charges to convictions."[59]

The flaw in DOC's position stems from reviewing what ACLU actually requested through the Eligible Voter Request.[60] ACLU *did not* request voter eligibility information in the Eligible Voter Request. Instead, it requested identifying information on those individuals who are incarcerated on a lead charge of a

---

[55] Id. at 125.

[56] See id.

[57] Tr. at 12.

[58] Id. at 13.

[59] Id. at 13.

[60] DOC's Answering Brief contains a heading labeled "DDOC is not the custodian of records pertaining to voter eligibility[,] and is not obligated under FOIA to create responsive records." See Ans. Br. at 7. This framing of ACLU's request reflects DOC's belief that the Eligible Voter Request actually requested information pertaining to voter eligibility, and not the specific records ACLU requested.

12

misdemeanor or on pretrial detention. While those individuals may be barred from voting based on their prior criminal history or some other factor, ACLU did not request that information. ACLU's motivation for the Eligible Voter Request undoubtedly stems from its intention to perform outreach to incarcerated individuals who may be eligible to vote. ACLU's motivation, however, has no bearing on the validity or feasibility of its request. DOC's concerns about providing accurate "voter eligibility" information are misplaced.

As to DOC's inability to filter-search its database for those individuals with a lead charge of a misdemeanor, DOC conceded to the Court that it can search its database by criminal statutes.[61] ACLU argued, therefore, DOC "could search by statutes that carry misdemeanor incarceration sentences with them and use that to sort the list."[62] DOC acknowledged it maintains records that include each incarcerated individual's name, SBI number, and dates of incarceration.[63]

Based on DOC's representations during oral argument, it possesses records that are responsive to the Eligible Voter Request. The First Cline Affidavit states DOC's database "is not equipped with a designated search function that could

---

[61] Tr. at 20.

[62] Id. at 25.

[63] Id. at 20-21.

13

produce the above-requested information."[64]  DOC has since clarified that it can perform a statute-by-statute search to provide responsive records.  Although such a search will prove more cumbersome than the "designated search function" referenced in the First Cline Affidavit, DOC can produce responsive records.  DOC may not maintain a ready-made list of individuals incarcerated on misdemeanor charges, but "it would defeat the letter and spirit of FOIA to not use a computer system in a manner" that can produce the requested records.[65]  Accordingly, DOC has not carried its burden to show that it cannot produce the records identified in the Eligible Voter Request.

B. **The Statutory Exemption bars disclosure of the individual identification records, but not the population records sought by ACLU**

DOC's next justification for denying the Eligible Voter Request rests on the Statutory Exemption.  DOC asserts "two statutes – 11 Del. C. § 8513(d) and 11 Del. C. § 4322(a) – bar production of the responsive records."[66]  DOC argues those same statutes prevent its production of responsive records regarding the Elderly Incarcerated Request.[67]

---

[64] R. at 125.

[65] Vanella, 2024 WL 5201305, at *9 (citing Shapiro v. United States Dep't of Just., 507 F. Supp. 3d 283, 333 (D.D.C. 2020)).

[66] Ans. Br. at 13.

[67] Id. at 18.

11 Del. C. § 8513 governs "dissemination of criminal history record information." 11 Del. C. § 8513(d) prohibits "dissemination of criminal history record information by any person or agency other than the [State Bureau of Identification] or its designee." 11 Del. C. § 8502(4) defines "criminal history record information" as "information collected by state or federal criminal justice agencies on individuals consisting of identifiable descriptions and notations of arrests, detentions, indictments, informations [sic] or other formal criminal charges and any disposition arising therefrom, sentencing, correctional supervision[,] and release." That statute further specifies that "the names and identification numbers of police, probation, and parole officers" are not included within the definition of "public record" under FOIA.[68] 11 Del. C. § 8502(4)(c) specifies that "court records of public judicial proceedings" fall outside the definition of "criminal history record information." 11 Del. C. § 8502(4)(d) further instructs that "criminal history record information" does not include "published court or administrative opinions or public judicial, administrative[,] or legislative proceedings."

Similarly, 11 Del. C. § 4322(a) restricts access to "the presentence report, the preparole [sic] report, the supervision history, and all other case records." "Supervision history" and "all other case records" are left undefined. § 4322(a)

---

[68] 11 Del. C. § 8502(4).

15

"represents an effort by our General Assembly to balance the need for safety and security in our state's prisons against an offender's ability to obtain information relevant to his incarceration."[69] § 4322(j) provides that "an individual denied access to a document under subsection (c) or (d) of this section may seek relief under § 10005 of Title 29." As § 4322 does not provide a FOIA request as a remedy for requests covered by § 4322(a), information properly classified as "supervision history" or "all other case records" are exempted from disclosure under FOIA.

The number of people incarcerated with a lead charge of a misdemeanor, or pretrial detention, clearly falls outside the definition of "criminal history record information," because those figures provide data on a general population – not specific individuals. Further, because those figures describe a population, they do not fall under the definition of an individual's "supervision history" or "all other case records." Accordingly, DOC erred by refusing to disclose that information under the Statutory Exemption.

DOC contends the name, SBI number, and date of incarceration do fall within those statutorily-protected definitions. In its Answering Brief, DOC asserts the records cannot be disseminated because they are "criminal history records information," without explaining how the records fit into that definition.[70] DOC

---

[69] Newsom v. Biden, 2011 WL 835135, at *4 (Del. Ch. Feb. 28, 2011).

[70] See Ans. Br. at 14-15.

16

posits providing those records would "require DOC to create records about the dispositions of incarcerated individual's charges, sentencing information[,] and 'correctional supervision.'"[71]

ACLU counters that "much, if not all, of the information" it requests are produced during court proceedings open to the public.[72] ACLU argues that, if DOC could not disseminate this information because of statutory prohibitions, those prohibitions should have also prevented DOC from sharing information with DOE.[73] Given DOC *did* share similar information with DOE, ACLU alleges DOC cannot now deny its FOIA request by asserting the Statutory Exemption.[74]

Incarcerated individuals' names and date of incarceration are announced in open court.[75] Thus, that information falls under the exceptions created by 11 Del. C. § 8502(4)(c) and (d), and falls outside the definition of "criminal history records information." SBI numbers, however, are not typically a part of the public record

---

[71] Id. at 15.

[72] Reply at 11.

[73] Tr. at 23.

[74] Id. at 24.

[75] See DE CONST., Art. 1, § 9 ("All courts shall be open.").

17

produced by courts. Although SBI numbers are available publicly,[76] the exceptions under § 8502(4) specifically apply to those records contained in court proceedings.

Nevertheless, SBI numbers do not fall within the definition of "criminal history record information" specified by § 8502(4).[77] SBI numbers are not "identifiable descriptions or notations of arrests, detentions, indictments, informations [sic], or other formal criminal charges and any dispositions arising therefrom, sentencing, correctional supervision, and release."[78] SBI numbers are identification numbers assigned to individuals by SBI to facilitate the recording of an individual's criminal history.[79] Accordingly, SBI numbers are not, in and of themselves, part of an individual's "criminal history records information," but

---

[76] During oral argument, both parties acknowledged the public can discover the SBI number of incarcerated individuals through use of VINElink, an online database. See Tr. at 11.

[77] The Elderly Incarcerated Opinion contains the conclusory statement that "inmate names, SBI numbers, and incarceration dates qualify as identifiable descriptors and information under the definition of criminal history record information." R. at 183. Aside from failing to provide any support for this conclusion, the Elderly Incarcerated Opinion misstates the definition of "criminal history record information," which includes "identifiable descriptions and notations of arrests, detentions, indictments, informations [sic] or other formal criminal charges and any disposition arising therefrom." The definition, when read in its entirety, does not include a term consisting simply of "identifiable descriptions" separated from the terms "arrests, detentions, indictments, informations [sic] or other formal criminal charges and any disposition arising therefrom." See 11 Del. C. § 8502(4).

[78] 11 Del. C. § 8502(4).

[79] See 11 Del. C. § 8525 (outlining the process by which a person voluntarily submits for fingerprinting); see also Code Del. Regs. 3110-8.0 (describing the procedure for the SBI to "furnish information pertaining to the identification and conviction date for any person to employers or prospective employers so long as the information is used solely for the purposes of making an employment decision."

18

instead are a number used to retrieve that information from SBI. Thus, SBI numbers cannot be considered "criminal history record information."

11 Del. C. § 4322(a)(1) poses a tougher hurdle to clear for ACLU's requests. The phrase "all other case records" conceivably captures a plethora of information. Certainly, the name, SBI number, and incarceration date of an individual could fall within "all other case records," as that data undoubtedly appears in most, if not all, case records. ACLU argues § 4322 does not apply here because "the request contemplates information already within the public domain."[80] ACLU posits §4322(a)'s "prohibitions are properly invoked when a request raises safety or security concerns to those who work or are incarcerated in Delaware's prisons."[81] As the public can already access the requested information, ACLU submits there are no safety or security concerns present.[82]

"If a statute is found to be clear and unambiguous, then the plain meaning of the statutory language controls."[83] § 4322(a) does not contain any limiting language based on the existence of "safety or security concerns." Moreover, § 4322(j) specifically identifies which provisions of § 4322 may be challenged through a FOIA

---

[80] Reply at 14.

[81] Id. at 13-14.

[82] Id. at 14.

[83] Judicial Watch, 267 A.3d at 1004 (internally quotations omitted) (quoting Ins. Comm'r of Del. v. Sun Life Assurance Co. of Can., 21 A.3d 15, 20 (Del. 2011)).

19

request.  § 4322(a) does not fall among the provisions identified in § 4322(j).  If the identifying information request by ACLU falls within the scope of "all other case records," § 4322(a) bars its dissemination by DOC.

To that point, ACLU directs the Court to Vanella.[84]  The Vanella court grappled with what constituted a "personnel file" under 29 Del. C. § 10002(o)(1).[85] It determined "whether a record is properly considered part of a personnel file is resolved by its content rather than mere location, however.  To that end, a public body may not restrict access to records otherwise disclosable under FOIA merely by placing them in a personnel file."[86]  Vanella, in contemplating the scope of an exemption created specifically by FOIA, narrowly construed that exemption to find identifying information did not cease to be a public record simply by being placed in a confidential personnel file.[87]  The Court finds Vanella's reasoning persuasive – and would apply it had DOC maintained its prior position on the Criminal Records Exemption.  The Criminal Records Exemption contains language similar to 29 Del. C. § 10002(o)(1), but applies to "criminal files and criminal records."  This

---

[84] Tr. at 24.

[85] Vanella, 2024 WL 5201305 at *10-11.

[86] Id. at *11.

[87] Id.

exemption bars disclosure of the requested records – independent of the Statutory Exemption argued here.[88]

The restrictions imposed by § 4322(a) present a materially different bar to disclosure, as they specifically limit what information DOC can disclose regardless of whether another public agency could disclose the same information. Further, § 4322(a) does not constitute an exemption created specifically for FOIA, such as the exemption for personnel files discussed in Vanella. The language of § 4322(a) not only limits the type of information DOC may not disclose, but also prevents dissemination of information based on *how* DOC obtained that information. DOC cannot disclose information, except to several enumerated entities, "obtained in the discharge of official duty by any member or employee of [DOC]."[89] Unlike an exemption created specifically by FOIA, which seeks to provide guidance on what constitutes a public record subject to a FOIA request, § 4322(a) restricts DOC's ability to disseminate "all other case records."

---

[88] Neither the Eligible Voter Opinion nor the Elderly Incarcerated Opinion discussed an exemption under 29 Del. C. § 10002(o)(4). In its briefing, DOC appeared to abandon this position. See Ans. Br. at 4 n.2. To the extent DOC does not abandon that position, the Court finds 29 Del. C. § 10002(o)(4) inapplicable to the requested records. As explained in Vanella, information does not become part of a file – personnel or criminal – based solely upon location. DOC has not provided any justification as to why the information sought by ACLU should fall under the criminal file exemption created by FOIA.

[89] 11 Del. C. § 4322(a).

In short, the plain text of § 4322(a) prohibits DOC from releasing information contained in "all other case records" that DOC obtained through the discharge of its official duty. Thus, the question becomes not whether the records sought by ACLU are public records, but whether DOC can disclose those records based on *how* DOC obtained them. Based upon DOC's representation of how it obtained the identifying information sought by ACLU, that information falls within the definition of "all other case records" obtained through discharge of DOC's official duty.

In the Second Cline Affidavit,[90] Ms. Cline averred DOC "populates the offender's criminal record by exchanging information with the courts, the Delaware Criminal Justice Information System, and the offender's interview at intake. This information is validated and exchanged and either becomes the offender's criminal record or enhances the criminal record stored and maintained by [SBI]."[91] The names, incarceration dates, and SBI numbers of individuals processed by DOC are obtained through DOC employees discharging their official duty and fall within the bounds of "all other case records." Accordingly, § 4322(a) prevents DOC from

---

[90] The Court notes that the Eligible Voter Opinion did not discuss the Statutory Exemption. Further, DOC did not provide the Second Cline Affidavit in response to the Eligible Voter Request. Nevertheless, the full record on appeal contains the Second Cline Affidavit, and DOC has argued the Statutory Exemption should apply to the Eligible Voter Request. As the two opinions were appealed together, the complete record contains the Second Cline Affidavit. That affidavit must be considered in relation to both opinions.

[91] R. at 177.

providing that identifying information to ACLU. It does not bar DOC from providing population-level data, as it did in response to the Elderly Incarcerated Request.

## C. The Litigation Exemption has been rendered moot

At the time of the Eligible Voter request, DOC cited the Litigation Exemption as a basis to deny ACLU's request. During oral argument, DOC acknowledged that, as the window for ACLU to appeal the previously-dismissed litigation had closed, the Litigation Exemption no longer applies as it pertains to that potential litigation.[92] DOC has not identified any other potential litigation on which to base its assertion of the Litigation Exemption. Thus, for purposes of these requests, the Litigation Exemption does not apply.

## V. Conclusion

DOC incorrectly concluded it did not possess the ability to provide records responsive to ACLU's requests. DOC possesses records responsive to the Eligible Voter Request. Accordingly, its denial of that request is **REVERSED in part**. DOC must provide ACLU with the number of individuals incarcerated on the lead charge of a misdemeanor and the number of individuals incarcerated on pretrial detention.

---

[92] Tr. at 36.

DOC correctly reasoned, however, that the individual identification information sought by ACLU cannot be disclosed under the Statutory Exemption in relation to 11 Del. C. § 4322(a). DOC's refusal to provide the individual identification information sought in the Eligible Voter Request is **AFFIRMED**. As DOC has already provided population data in response to the Elderly Incarcerated Request, its denial of the additional information sought in that request is **AFFIRMED**.

**IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge